IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT SALINAS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.: 4:14-cv-03153 |
| | § | |
| KROGER TEXAS L.P., | § | JURY TRIAL DEMANDED |
| | § | |
| Defendant. | § | |

**DEFENDANT KROGER TEXAS L.P.'S MOTION FOR
SUMMARY JUDGMENT**

Defendant Kroger Texas L.P. (hereinafter "Kroger" or "Defendant") submits this Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, seeking to dismiss all claims asserted by Plaintiff Robert Salinas (hereinafter "Salinas" or "Plaintiff").

Respectfully submitted,

Cozen O'Connor

/s/ David L. Barron_____
David L. Barron
Southern District No. 21117
State Bar No. 00798051
dlbarron@cozen.com
Leila C. Clewis
Southern District No. 1872165
State Bar No. 24077579
lclewis@cozen.com
COZEN O'CONNOR, P.C.
LyondellBasell Tower
1221 McKinney Street, Suite 2900
Houston, Texas 77010
Telephone (832) 214-3900
Facsimile (832) 214-3905
COUNSEL FOR DEFENDANT
KROGER TEXAS L.P.

**CERTIFICATE OF SERVICE**

I hereby certify that on July 28, 2015 a true and correct copy of Defendant Kroger

Texas L.P.'s Motion for Summary Judgment was served on all counsel of record via the

Court's ECF system, by email, and/or hand-delivery as follows:

Francisco Caycedo
Caycedo Law, P.C.
14090 Southwest Freeway, Suite 300
Sugar Land, Texas 77478
frank.caycedo@caycedolaw.com

Joshua Estes
The Estes Law Firm, P.C.
1708 Thompson Rd.
Richmond, Texas 77469
joshuaestes@estespc.net

/s/ *David L. Barron*
David L. Barron

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................. 1

II.    FACTUAL BACKGROUND ................................................................................ 1

    A.    Plaintiff's Allegations of Harassment. .................................................... 2

    B.    April 6, 2012 Incident ............................................................................ 4

    C.    Kroger's Investigation into Plaintiff's Allegations of Assault ............... 6

III.    ARGUMENTS AND AUTHORITIES................................................................. 7

    A.    Summary Judgment Standard ................................................................. 7

    B.    Plaintiff's Sexual Harassment Claims are Barred, in Part, by the
Applicable Statute of Limitations. ......................................................... 8

    C.    Summary Judgment is Also Appropriate On the Merits With Respect to
Plaintiff's Sexual Harassment Claim. .................................................... 9

        1.    Legal Framework ......................................................................10

        2.    There is not Sufficient Evidence to Prove that Castillo is a
Homosexual and that His Conduct Towards Plaintiff was
Motivated by Sexual Desire....................................................12

        3.    Castillo Treated Men and Women the Same—He Made Vulgar and
Inappropriate Comments to and About Everyone. ...................15

    D.    Plaintiff's Allegations of Harassment are not Severe or Pervasive Enough
to Rise to the Demanding Standard Set Forth by *Oncale*. ....................16

IV.    CONCLUSION................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)........................................................................................7

*E.E.O.C. v. Boh Bros. Const. Co.*,
  731 F.3d 444 (5th Cir. 2013) ..................................................10, 11, 12

*Gibson v. Potter*,
  264 F. App'x 397 (5th Cir. 2008) ...........................................................18

*Hart v. Hairston*,
  343 F.3d 762 (5th Cir. 2003) ...................................................................7

*Harvill v. Westward Commc'ns*,
  LLC, 433 F.3d 428 (5th Cir.2005)..........................................................11

*Hockman v. Westward Communications, LLC*,
  407 F.3d 317 (5th Cir. 2004) .................................................................17

*Huckabay v. Moore*,
  142 F.3d 233 (5th Cir.1998) ....................................................................8

*Indest v. Freeman Decorating, Inc.*,
  164 F.3d 258 (5th Cir. 1999) .................................................................10

*Kreamer v. Henry's Marine*,
  No. CIV.A. 03-3139, 2004 WL 2297459 (E.D. La. Oct. 7, 2004) ........13, 14

*La Day v. Catalyst Tech., Inc.*,
  302 F.3d 474 (5th Cir.2002) ....................................................11, 12, 16

*Little v. Liquid Air Corp.*,
  37 F.3d 1069 (5th Cir. 1994) (en banc) ...................................................7

*Littlefield v. Forney Indep. Sch. Dist.*,
  268 F.3d 275 (5th Cir. 2001) ...................................................................8

*Olabisiomotosho v. City of Houston*,
  185 F.3d 521 (5th Cir. 1999) ...................................................................7

*Oncale v. Sundowner Offshore Servs., Inc.*,
  523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)................10, 12, 16, 17

iv

*Paul v. Northrop Grumman Ship Sys.*,
    309 F. App'x 825 (5th Cir. 2009) ............................................................................18

*Pegram v. Honeywell, Inc.*,
    361 F.3d 272 (5th Cir.2004) ........................................................................................9

*Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*,
    336 F.3d 410 (5th Cir. 2003) ......................................................................................7

*Reine v. Honeywell Int'l Inc.*,
    362 F. App'x 395 (5th Cir. 2010) ............................................................................15

*Shepherd v. Comptroller of Public Accounts of State of Texas*,
    168 F.3d 871 (5th Cir. 1999) ..............................................................................17, 18

*Smith v. Brenoettsy*,
    158 F.3d 908 (5th Cir. 1998) ..................................................................................7, 8

*St. Clair-Sears v. Lifechek Staff Servs., Inc.*,
    No. 4:12-CV-52, 2013 WL 4487531 (S.D. Tex. May 30, 2013)................................18

*Stewart v. Mississippi Transp. Comm'n*,
    586 F.3d 321 (5th Cir. 2009) ....................................................................................17

*Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.*,
    290 F.3d 303 (5th Cir. 2002) ......................................................................................7

*Wehrle v. Office Depot, Inc.*,
    954 F. Supp. 234 (W.D. Okla. 1996) ......................................................................14

*Williamson v. City of Houston, Tex.*,
    148 F.3d 462 (5th Cir. 1998) ....................................................................................11

*Zipes v. Trans World Airlines, Inc.*,
    455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982)................................................8

**Statutes**

42 U.S.C. § 2000e–5(e)(1)..........................................................................................8

**Other Authorities**

FED. R. CIV. P. 56(c)....................................................................................................7

# I.
# INTRODUCTION

This lawsuit arises out of horseplay between two male co-workers which culminated in a criminal assault.  Once notified of the assault, Kroger terminated the offending employee and Plaintiff never worked with him again.  Plaintiff is still employed with Kroger and has worked since April 2012 without complaint of harassment.

The conduct complained of by Plaintiff in this suit is admittedly inappropriate for the workplace and is not condoned by Kroger.  That said, Plaintiff's complaints do not rise to the level of actionable sexual harassment under Title VII.  Plaintiff claims that he was subjected to several incidents of touching and name calling over a period of approximately one year.  As an initial point, the majority of the allegations occurred outside the statute of limitations.  The assault was within the statute of limitations, but the final act was not based on sex; it was properly dealt with as a criminal matter not sexual harassment.

On the merits, the harassment claims fail because there is no genuine issue of material fact regarding the earlier conduct being "based on sex" or "severe or pervasive" as defined in the Fifth Circuit.  The Plaintiff and David Castillo, the alleged "harasser," routinely joked around with one another and knew each other socially outside of work.  They exchanged inappropriate comments and frequently "horse-played" during their shifts.  Thus, even if Plaintiff's allegations are true, the handful of comments and conduct he describes are nothing more than distasteful jokes among co-workers, and Plaintiff cannot show that Castillo's conduct rises to the level of sexual harassment.

# II.
# FACTUAL BACKGROUND

Salinas began his employment with Kroger in or about November 1981, working as a sacker.  (Exhibit 1 – 2015 Deposition Transcript of Robert Salinas, p. 75:22-24; 76:4-6).

Plaintiff performed utility duties (i.e. sweeping, cleaning etc.) for a brief period before he moved to the produce department as a produce clerk in 1985. (*Id*. at p. 77:20 – 78;12); (Exhibit 2 – Employee History Form). Plaintiff has remained in the produce department since his initial transfer. (*Id.*). During his tenure with Kroger, Plaintiff worked at a dozen store locations. (Ex. 1, p. 79:20-21; 81:14-25; 82:8-24: 83:21-25). In or about January 2011, Plaintiff transferred to Store No. 10, in Rosenberg, where he continued to work in the produce department as a clerk (*Id*. at p. 78:9-12).

## A.    Plaintiff's Allegations of Harassment.

Shortly after Salinas moved to Store No. 10, he began working with David Castillo, a fellow produce employee. (Ex. 1, p. 46:20-21). During their time together in Store No. 10, Salinas and Castillo routinely joked around and "made fun" of each other during work. (Exhibit 3 – Deposition Transcript of Tony Medina, p. 129:3-17; 212:13-22). Salinas grew up near a family member of Castillo and knew him socially. (Ex. 1, p. 41:23 – 42:4; 43:9-25). The two would take turns teasing and insulting one another. (Ex. 3, p. 129:3-17; 212:13-22). Produce Manager Tony Medina specifically recalls hearing Salinas call Castillo "mija", "girlfriend", "princess", and "sister". (Ex. 3, p. 101:12-16). Medina also recalls hearing Castillo exchange words like "faggot", "dumb ass" and "stupid" as he bantered back and forth with Salinas. (*Id*. at p. 101:17-23). None of the horseplay and banter that Medina observed between Salinas and Castillo was serious enough to warrant disciplinary action. (*Id*. at p. 100:25 – 101:5; 110:5-12).

Furthermore, all of the men who worked in the produce employees at Store No. 10 joked around and teased one another. (*Id*. at p. 105:23 – 106:10). They were a tight-knit group, and many of them had worked together for a long time. (*Id.*). Furthermore, Medina personally observed "a lot of laughing, kind of joking around" between Salinas and Castillo. (*Id*. at p. 211:13-17). As the produce manager, Medina frequently interacted with Castillo and Salinas,

and during those interactions, Medina never observed or witnessed any sexually harassing conduct (*Id*. at p. 221:10-14; 17-18).

Plaintiff alleges that Castillo called him names ("faggot", "gay", "princess", "Mija") and made crude comments while they worked together in Store No. 10.  (Ex. 1, p. 147:16:25; 336:1).  Plaintiff further alleges that Castillo touched him inappropriately on three occasions between June 2011 and November 2011.  First, Salinas claims that in June 2011, while he was bending over, Castillo grabbed Plaintiff's buttocks and asked "when are you gonna give me some of that white ass."  [Document 1, ¶ 17a].  During this same encounter, Castillo allegedly stated: "If you don't give it to me I am going to take it anyway.  No one is here in the morning just you and me.  I will rape you and no one will find out.  They won't believe you.  You have no witnesses to prove it…[y]ou don't know me, but I used to be locked up.  I used to rape guys like you in jail."  [*Id*. at ¶¶ 17c – 18].  Next, Plaintiff alleges that two months later, in September 2011, Castillo grabbed Plaintiff's testicles and said: "When are you gonna give me some?"  [*Id*. at ¶ 31].  Finally, in November 2011, Plaintiff claims that Castillo ran his hand across Plaintiff's buttocks.  (Ex. 1, p. 196: 14-18).

 Plaintiff alleges in his Original Complaint that he reported Castillo's inappropriate behavior to Store Manager Michael Childs, Tony Medina and two other Co-Managers, Cecilia Mendoza and Gordana Stjepanovic, but that nothing was done.[1]  Incredibly, in his 2014 deposition, however, Plaintiff testified that Kroger did, in fact, intervene and by November 2011, Castillo's allegedly inappropriate touching had ceased:

Q: Okay.  So there was a point in time that --

---

[1] For the purpose of this Motion only, Defendant assumes that Plaintiff's allegations of inappropriate touching and complaints of harassment are true.  However, it is Defendant's position that Plaintiff never complained to any member of Kroger store management about any incidents of sexual harassment or Castillo's alleged inappropriate touching.

A: He stopped everything.

Q: -- he stopped everything.

A: Yes.  He stopped.

Q: Okay.  And did it all come back, just back in -- in April, on that one day or, what?

A: Yeah.  He was making fun of my hair.  He don't like my hair.

(Exhibit 4 – 2014 Deposition Transcript of Robert Salinas, p. 76:1-9).

Q: Okay.  So the --  Are you saying that the inappropriate touching and the sexual comments continued through the end of 2011?

A: To the end – Almost to the end, to – to like November.

(*Id*. at p. 77:16-20).

Q: And by November, they said something to David Castillo about all of this and then the touching stopped.

A: "He didn't touch me aft—after that.  After that, it was – he just – he just made fun of me like my hair."

(*Id*. at p. 78:9-12).   Salinas testified that after Kroger talked to Castillo, he stopped bothering

Plaintiff, apart from making fun of his hair:

Q: From November until April, the only complaint that you had about David Castillo was that he would make fun of you, and primarily, make fun of you about your hair.

A: Yes.

(*Id*. at p. 78:9-12).   Importantly, Salinas testified that he did not make any more sexual

harassment complaints to Kroger after November 2011.

**B.      April 6, 2012 Incident**

On or about April 6, 2012, while they were working in the produce cooler, Castillo and

Salinas had a personal conversation wherein Castillo shared with Plaintiff that he was upset

because he was having problems in his marriage.  (Ex. 4, p. 79:4-13).  Plaintiff told Castillo that

he "should just try to get his life straight, try to get his straight and try fix -- fix everything."  (*Id*.

at p. 80:2-4).  Later that same morning, Castillo began to make fun of Plaintiff's hair.  (*Id*. at p. 79:8-16); (Ex. 1, p. 205:22-23; 322:13-15).  Salinas responded and the two had an exchange of words:

> Q:     Did you say something back to him when he was making fun of your hair?
>
> A:     Yeah, I said take a – take a look at your hair.  Don't be making fun of my hair. Look at your own hair.

(p. 322:19-25).

Another employee, Andres Reyes, was present in the produce cooler during this exchange.  (*Id*. at p. 209:9-12).  At some point during the morning, while the three were in the cooler, Castillo allegedly grabbed Salinas around the neck and held a produce knife near Plaintiff's throat.  (*Id*. at p. 210:10-12).  Salinas pushed Castillo's arm away, and immediately left the cooler.  (*Id*. at p. 210:22-25).  Castillo did not say anything else to Salinas (*Id*. at p. 221:13-15).

Salinas did not report the incident to Medina or any other member of management that day and appeared to laugh it off at the time.  (*Id*. at 215:21-25).  On April 7, 2012, the day after the incident, Salinas told Medina that he "needed to talk to him."  (Exhibit 5, Tony's Medina's Statement).  Medina asked Plaintiff what was wrong, but Salinas would not elaborate.  (*Id.*).  Plaintiff stated that he could not tell Medina what was wrong at that time, but that it was important.  (*Id.*).  Medina urged Salinas to tell him what the problem was, because Medina knew he would get busier as the day progressed.  (*Id.*). Plaintiff refused to give Medina any details at that time.  (*Id.*).  Later that day, Plaintiff called Store No. 10 to speak with Medina.  (Ex. 3, p. 183:5-17).  However, as predicted, Medina had gotten busy with work at the Store and was not available at the time Salinas called.  (*Id.*).

**C.      Kroger's Investigation into Plaintiff's Allegations of Assault**

Instead of calling back later, or reaching out to any other member of Kroger management, Plaintiff contacted the Rosenberg Police Department ("RPD").  (Ex. 1, p. 214:25 – 215:7; 21-25; 216:1-6; 222:19-25).  An RPD officer (Delgado) visited Store No. 10 that same day in response to Salinas' complaint.  (Exhibit 6, Deposition Transcript of Michael Childs, p. 144:13-23).  Delgado first spoke with Store Manager Michael Childs.  (*Id.*).  Delgado informed Childs of Plaintiff's allegations regarding the knife incident that allegedly occurred between Plaintiff and David Castillo on or about April 6, 2012.  (*Id*. at p. 144:24 – 145:11).  Delgado spoke with Medina as well.  (*Id*. at p. 145: 1-5).  Delgado instructed Childs and Medina not to talk to Castillo or take any action until RPD had completed its investigation.  (*Id*. at p. 148:13-15).  Childs immediately placed Castillo on vacation to keep him out of the store.  (*Id*. at p. 182:16-22).  Plaintiff and Castillo did not work together again after Kroger became aware of the April 6, 2012 incident.  (Exhibit 7 - David Castillo's Punch Detail History, 00358) (Exhibit 8 – Robert Salinas's Punch Detail History, 00353).

For the next few days, Childs called the RPD regularly for an update and to get permission to start an internal investigation.  (Ex. 6, at 153:9-154).  RPD gave Childs permission to proceed on or about April 12, 2012, and Childs took immediate steps to investigate the incident.  (*Id*. at p. 155:210-14).  Childs obtained written statements from Grocery Manager Tony Medina, Robert Salinas, Andres Reyes, and David Castillo.  (*Id*. at p. 5-14).  In addition, former Kroger Labor Relations Manager William Yelderman, Athar Bilgrami, and Childs interviewed Salinas, Reyes and Castillo.  (*Id*. at p. 166:9-15).  At the conclusion of its investigation, Kroger decided to suspend Castillo pending the advisability of termination.  (*Id*. at p. 211:23-24).  Thereafter, Castillo resigned in lieu of being terminated.  (*Id*. at p. 211:24-25).  Salinas never worked with Castillo again after the knife incident on April 6.  (*Id.*).

**III.**
**ARGUMENTS AND AUTHORITIES**

**A.      Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322-23; *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003). An issue is material if its resolution could affect the outcome of the action.  *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 310 (5th Cir. 2002).  In deciding whether a fact issue has been created, the facts and the inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party.  *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).  However, factual controversies are resolved in favor of the nonmovant "only when there is an actual controversy -- that is, when both parties have submitted evidence of contradictory facts."  *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue with respect to those issues on which the movant bears the burden of proof at trial.  *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998).  The movant

meets this initial burden by showing that the "evidence in the record would not permit the nonmovant to carry its burden of proof at trial." (*Id.*). If the movant meets this burden, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (quoting *Tubacex, Inc. v. M/VRisan*, 45 F.3d 951, 954 (5th Cir. 1998)). A dispute over a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. (*Id.*). (quoting *Brenoettsy*, 158 F.3d at 911).

**B.    Plaintiff's Sexual Harassment Claims are Barred, in Part, by the Applicable Statute of Limitations.**

The limitations period contained in Title 42 U.S.C. § 2000e–5(e)(1) was intended by Congress to act as a statute of limitations. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393–94, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). In deferral states such as Texas, a Title VII plaintiff must file a charge of discrimination with the EEOC within 300 days after the occurrence of the discriminatory conduct. *See Huckabay v. Moore*, 142 F.3d 233, 238 (5th Cir.1998). If a plaintiff does not file a claim within 300 days, that claim is barred.

In this case, Plaintiff filed his EEOC charge on January 10, 2013. (Exhibit 9 – EEOC Charge). Counting back 300 days from January 10, 2013, the date for determining whether any alleged sexual harassment is timely is March 12, 2012. Therefore, events occurring prior to March 12, 2012 are barred by the limitations period. Stated differently, only events that occurred during the 300 days prior to filing—between March 12, 2012 and January 10, 2013—are actionable under Title VII. The last day that Castillo and Salinas worked together was April 6, 2012. Although the April 6, 2012, incident occurred within the 300-day limitations period, the incident was not sexual in nature and, therefore, not actionable under Title VII. Castillo did not make any sexually threatening or sexually suggestive comments when he held the knife to

8

Plaintiff's throat, nor did he grope or otherwise touch Plaintiff inappropriately at that time. (Ex. 1, p. 220:15-22). In fact, there is no evidence to even suggest that Castillo's action in holding the knife to Plaintiff's throat was sexually motivated in any way. Stated simply, the April 6, 2012 incident may have been a criminal act, but it was not sexual harassment.

According to Plaintiff's own testimony and his own prepared "Synopsis of Events", the last incident that was even remotely sexual in nature occurred in November 2011, five months before the April 6, 2012 incident. (Ex. 4, p. 77:16-20). Because Plaintiff has not alleged any facts that Castillo touched him inappropriately, made sexually threatening comments or harassed him during the five month interim, Plaintiff cannot show that Castillo's knife assault was a continuation of, or related to, the earlier instances of alleged sexual harassment. As the Fifth Circuit has explained, "[i]n order to rely on a continuing violation theory, a plaintiff must show that the harassment within the limitations period and the harassment outside the limitations period constituted 'a series of related acts' and that 'an organized scheme led to and included the present violation.' " *See Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir.2004).

Plaintiff has failed to set forth evidence that *actionable* sexual harassment occurred during the limitations period. (Ex. 4, p. 78:9-21). For this reason, Plaintiff cannot bootstrap his untimely allegations of sexual harassment to an otherwise timely allegation of assault in order to salvage his Title VII claim. Consequently, Plaintiff's claim for sexual harassment should be dismissed.

**C.    Summary Judgment is Also Appropriate On the Merits With Respect to Plaintiff's Sexual Harassment Claim.**

Even if the Court does not dismiss the case based on Kroger's statute of limitations defense, summary judgment is nonetheless warranted on Salinas's sexual harassment claims because: (1) the alleged harassment was not "based on sex"; and (2) the harassment allegations,

even if taken as true, do not rise to the level of severe or pervasive conduct required under Fifth Circuit jurisprudence.   Simply, Plaintiff's allegations of harassment involve isolated incidents of teasing, crude language and horseplay over an abbreviated period from a single co-worker, who was admittedly terminated by Kroger.   These allegations set forth by Salinas are wholly insufficient to establish a hostile work environment under federal law.

### 1.    Legal Framework

Title VII's prohibition of employment discrimination based on sex includes a prohibition of same-sex sexual harassment.   (*Id.*). (*citing Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 78–81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)).   However, the Supreme Court has reiterated on several occasions that "Title VII is not a general civility code for the American workplace."  *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 263 (5th Cir. 1999).   Further, the Court has

> [A]lways regarded the requirement [of objectively offensive, severe and pervasive conduct] as crucial, and as sufficient to ensure that courts and juries do not mistake ordinary socializing in the workplace-such as male-on-male horseplay or intersexual flirtation-for discriminatory "conditions of employment."

*Oncale*, 118 S.Ct. at 1003.   Importantly, the Supreme Court has "made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment, and the courts of appeals have heeded this view."  *Id.* at 118 S.Ct. at 2284. In other words, Title VII prohibits only harassment based on discrimination because of sex that is severe enough to alter the conditions of a victim's employment.  *Oncale,* 523 U.S. at 80–81.

An employer's liability for harassment under Title VII depends on the status of the harasser.  *E.E.O.C. v. Boh Bros. Const. Co.*, 731 F.3d 444, 452 (5th Cir. 2013).   It is well settled that "if the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling the working conditions." (*Id.*).   Thus, in order to establish a *prima facie*

case of sexual harassment, a plaintiff must show: (1) he is a member of a protected group; (2) was the target of sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a "term, condition or privilege" of the plaintiff's employment; and (5) the plaintiff's employer knew or should have known about the harassment but failed to remedy it.  *Harvill v. Westward Commc'ns*, LLC, 433 F.3d 428, 434 (5th Cir.2005).  *Boh Bros.,* 731 F.3d at 453. (*citing Woods*, 274 F.3d at 298).  Because the negligence standard governs employer liability for co-worker harassment, the employer may only be liable if it "knew or should have known of the harassment in question and failed to take prompt remedial action."  *Williamson v. City of Houston, Tex.*, 148 F.3d 462, 464 (5th Cir. 1998).

In the Fifth Circuit, cases of same-sex discrimination are analyzed under a two-step inquiry.  *E.E.O.C. v. Boh Bros. Const. Co.*, 731 F.3d 444, 453 (5th Cir. 2013) (*citing La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 478 (5th Cir.2002).  First, the court must determine whether the alleged conduct was sex discrimination (i.e. based on sex).  If the answer is "yes," the court must then decide whether the complained of conduct meets the applicable standard for a hostile-work environment claim (i.e. severe or pervasive).  Importantly, the Fifth Circuit has repeatedly acknowledged that, "same-sex harassment that is 'severe or pervasive' enough to create a hostile environment might be excluded from the coverage of [T]itle VII because it was not discriminatory on the basis of sex."  *Boh Bros. Construction Co.*, 731 F.3d at 453 (*citing La Day*, 302 F.3d. at 478).  Or, "[o]n the other hand, same-sex harassment that is indisputably discriminatory might not be serious enough to make out either a *quid pro quo* or hostile environment claim."  *Id.* (citation omitted).

Applying this two-step inquiry to the present case, the most critical issues for the Court to consider are: (1) whether Plaintiff has presented sufficient evidence to show that Castillo

harassed Plaintiff "because of sex" as required by Title VII, and (2) whether Castillo's harassment was severe or pervasive.  To aid in the analysis of same-sex harassment, the Supreme Court charted three ways for an employee to prove that harassment in the same-sex context is "because of" sex:

1. A plaintiff may show that the harasser was homosexual and motivated by sexual desire;

2. A plaintiff may show that the harassment was framed 'in such sex-specific and derogatory terms . . . as to make it clear that the harasser was motivated by general hostility to the presence' of a particular gender in the workplace; and

3. A plaintiff may "offer direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace."

*See Boh Bros.*, 731 F.3d at 455 (*citing Oncale*, 523 U.S. at 80-81 (1998).  The Fifth Circuit has also recognized that "a plaintiff can satisfy Title VII's because-of-sex requirement with evidence of a plaintiff's perceived failure to conform to traditional gender stereotypes."  *Boh Bros.*, 731 F.3d at 455.

### 2. There is not Sufficient Evidence to Prove that Castillo is a Homosexual and that His Conduct Towards Plaintiff was Motivated by Sexual Desire.

The Fifth Circuit has provided district courts with two examples of proof that constitutes "credible evidence that a harasser is homosexual.  *La Day,* 302 F.3d at 478.  First, a plaintiff could introduce "evidence suggesting that the harasser intended to have some kind of sexual contact with the plaintiff rather than merely to humiliate him for reasons unrelated to sexual interest."  *Id.* at 480.  And second, a plaintiff could provide "proof that the alleged harasser made same-sex sexual advances to others, especially to other employees." *Id.*

Here, the summary judgment record does not contain any evidence to suggest that Castillo was a homosexual or that he otherwise motivated by a sexual desire.  *See La Day,* 302 F.3d at 478 (requiring evidence that the harasser is homosexual and that the harassment was an

explicit or implicit proposal for sexual activity).  In fact, all of the evidence points to the opposite conclusion. Plaintiff was aware that Castillo was married and had several children.  (Ex. 1, p. 50:4-9).  Plaintiff knew that Castillo had several extramarital affairs with women. (*Id.* at p. 56:17-23).   Plaintiff also heard Castillo make sexual remarks about female co-workers and customers.  (*Id.* at 62:4 – 63:11).

On the other hand, Plaintiff admits that he never heard Castillo make sexually inappropriate comments to other male employees or customers.  Plaintiff also never saw Castillo inappropriately touch any other male co-workers or customers.  (Ex. 1, p. 59:20 – 60:12; 61:10-18; 63:12-13).  When Plaintiff would run into Castillo outside of work, from time to time, he never saw Castillo touch another man in a sexual way or make any sexual comments towards men.  (*Id.*).   Further, Plaintiff never heard any rumors or suggestions that Castillo was homosexual or gay.  (*Id.* at pp.  60:11-19; 61:10 - 62:3).  Finally, the only evidence Salinas has presented to even suggest that Castillo may be homosexual is his own self-serving testimony. (Ex. 1, p. 132:17-23).  But this is not sufficient.  *See Kreamer v. Henry's Marine*, No. CIV.A. 03-3139, 2004 WL 2297459, at *7 (E.D. La. Oct. 7, 2004) (quoting *Davis v. Coastal Int'l Sec., Inc.,* 275 F.3d 1119, 1123 (D.C.Cir.2002) (rejecting sexual solicitation theory because, *inter alia,* plaintiff's evidence of harassers' homosexuality was based on harassers' conduct)).

In this case, the alleged harassment does not fall within the coverage of Title VII because there is no evidence that Castillo was motivated by a sexual desire.  Plaintiff will argue that comments about "raping" or having sex with him constitute sexual harassment.  Vulgar comments between men, however, is not enough.  Salinas and Castillo "roughhoused" often; they frequently exchanged dirty sexual jokes and comments; and teased each other regularly. Courts have held that workplace horseplay, even when accompanied by sexual overtones, is not

sufficient to invoke Title VII's protections, unless the employee can establish that the harassment was directed toward him because of his sex.  *Wehrle v. Office Depot, Inc.*, 954 F. Supp. 234, 236 (W.D. Okla. 1996).  For example, in *Kreamer v. Henry's Marine*, the plaintiff alleged that his co-worker: (1) grabbed his crotch on eight separate occasions during the course of one week; (2) repeatedly touched his sides; and (3) whistled and made offensive gestures towards the plaintiff each time he came into contact with the plaintiff.  2004 WL 2297459 (E.D. La. Oct. 7, 2004).  The plaintiff also alleged that once, slightly bent over, the co-worker came up behind him, grabbed his sides, and said: "I would like to f**k that piece of ass."  (*Id*. at *2).  According to the plaintiff, on another occasion, the co-worker stood over the plaintiff while he was sleeping, and when the plaintiff awoke, the co-worker was staring at him.  (*Id*. at *3).

The Court found that all of these actions taken together did not evidence an intent on the part of plaintiff's co-worker to *discriminate* against the plaintiff on the basis of gender or sex. (*Id*. at *6).  Rather, the conduct was an attempt to humiliate the plaintiff, *not* an attempt to sexually harass him.  (*Id.*).

The same is true for the present case.  All of deposition testimony and record evidence shows that Castillo's alleged comments ("when are you going to give me some of that white ass" and "I will rape you and no one will find out") were attempts to embarrass Plaintiff for reasons unrelated to sexual interest, rather than an actual intent to have sexual contact.  Both Medina and Salinas testified that Castillo was prone to using foul language with everyone.  Moreover, Medina described Castillo as a jokester who horse-played with Salinas as the other guys in the produce department.  Grabbing Salinas around the neck and holding a knife close to his throat evidences an intent to bully, not to sexually harass.  *See Kreamer*, 2004 WL 2297459, at *2 (finding that co-worker's deliberate act of repeatedly moving the rope when plaintiff was

attempting, in rough water, to tie two boats together, was evidence of the co-worker's intent to humiliate, bully and/or annoy the plaintiff, not harass him, despite previous instances of inappropriate touching and explicit comments).  Viewing the evidence as a whole, and even in a light most favorable to Plaintiff, Salinas has simply failed to provide any proof that Castillo was acting out some bona fide sexual interest.  The record clearly establishes that Castillo's conduct was nothing other than vulgar provocations having no causal relationship to Salinas's gender as a male.  As such, summary judgment on Plaintiff's sexual harassment claims is warranted.

### 3.    Castillo Treated Men and Women the Same—He Made Vulgar and Inappropriate Comments to and About Everyone.[2]

When, as here, the complained of "conduct is equally harsh towards men and women, there is no hostile work environment based on sex."  *Reine v. Honeywell Int'l Inc.*, 362 F. App'x 395, 397 (5th Cir. 2010) (*citing Butler v. Ysleta Indep. Sch. Dist.,* 161 F.3d 263, 270–71 (5th Cir.1998).  Thus, although Plaintiff has alleged facts to show that Castillo was insulting and demeaning, Plaintiff has failed to show that the harassment was "based on sex."  Salinas' own testimony undercuts any inference of sex discrimination, because he testified that Castillo was an "equal opportunity" harasser.  In other words, Castillo directed his lewd behavior and comments to both men and women, indiscriminately.  As such, Salinas cannot prove that the complained of conduct was based on sex.  Specifically, Plaintiff alleged that Castillo made suggestive comments about female customers and acted in a vulgar manner towards female co-workers:

> Q: During the time that you worked with Mr. Castillo, did you ever hear him make sexual comments about women, like, Hey, I would like to have sex with her, or, [s]he's attractive, or anything like that?
>
> A: Yes.
>
> Q: Okay.  What kinds of comments did you hear?

---

[2] Notably, Plaintiff does not contend, and there is no evidence to suggest that Castillo was motivated by general hostility to the presence of a particular gender in the workplace.

A: He said that he was – when he got – he was going to – after he got through with Gloria that she's not going to be able to walk right, when he'd get done with her.

(Ex. 1, p. 62:4-13)

Q: Okay.  How about anything – any other sexual remarks like that in regards to other women?

A: With other women?

Q: Yeah.  Like customers, Hey, she's good looking, or anything like that?

A: Yeah, he would say that she's, you know, good looking, yeah, she's a pretty woman.

(*Id*. at p. 62:21 – 63:2).   In light of this testimony, there is simply no way for Plaintiff to reasonably argue that Castillo's treatment of him was based on sex.

### D.     Plaintiff's Allegations of Harassment are not Severe or Pervasive Enough to Rise to the Demanding Standard Set Forth by *Oncale*.

To be actionable under Title VII, the employee must "prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted discrimination because of sex."  *Oncale,* 523 U.S. 75 (1998).  *See also La Day*, 302 F.3d at 478.  Further, [c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment-an environment that a reasonable person would find hostile or abusive-is beyond Title VII's purview' "  *Oncale,* 523 U.S. at 81 (quoting *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, (1993)) (citing *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 67 (1986)).  Thus, the complained of behavior must be severe in order "to ensure that courts and juries do not mistake ordinary socializing in the workplace-such as male-on-male horseplay or intersexual flirtation-for discriminatory 'conditions of employment.' " (*Id.*).

In determining whether the behavior was objectively offensive, the Court must judge the behavior "from the perspective of a reasonable person *in the plaintiff's position*, considering 'all the circumstances.' " *Id*. (quoting *Harris,* 510 U.S. at 23) (emphasis added).  In cases of alleged same-sex harassment, "(as in all) harassment cases, that inquiry requires careful consideration of

16

the social context in which particular behavior occurs and is experienced by its target." (*Id.*). This is so because "[t]he real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Id.* at 82.

Further, in deciding whether conduct is severe or pervasive, the Court should look at the totality of the circumstances. *See Stewart v. Mississippi Transp. Comm'n*, 586 F.3d 321, 330 (5th Cir. 2009). Relevant factors include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." (*Id.*). Finally, to be actionable, the challenged conduct "must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so." *Shepherd v. Comptroller of Public Accounts of State of Texas*, 168 F.3d 871, 874 (5th Cir. 1999).

In this case, the complained of conduct was not severe or pervasive. Plaintiff describes a sum total of two incidents where Castillo allegedly grabbed his buttocks, and one instance where Castillo allegedly grabbed Plaintiff's testicles. Three isolated incidents, over the course of more than one year, coupled with crude jokes and inappropriate banter is not severe or pervasive enough to be actionable under the high standard set forth by Fifth Circuit. Indeed, the Fifth Circuit has found acts that were arguably similar to or more severe than those alleged in this case insufficient to create a hostile work environment because they did not rise to the level of severity or pervasiveness required by law. *See e.g., Hockman v. Westward Communications, LLC*, 407 F.3d 317, 321-322, 328 (5th Cir. 2004) (concluding that conduct was not severe despite evidence of repeated touching and offensive remarks of a sexual nature, including allegations that over

17

approximately 1 ½ years the alleged harasser, among other things, (1) once made a remark to plaintiff about another employee's body, (2) once slapped plaintiff on the behind with a newspaper, (3) "grabbed or brushed" against plaintiff's breasts and behind, (4) once held plaintiff's cheeks and tried to kiss her, (5) asked plaintiff to come to the office early so that they could be alone, and (6) once stood in the door of the bathroom while plaintiff was washing her hands); *St. Clair-Sears v. Lifechek Staff Servs., Inc.*, No. 4:12-CV-52, 2013 WL 4487531, at *5 (S.D. Tex. May 30, 2013) (finding no actionable harassment where supervisor rubbed up against plaintiff and placed his hand on her "butt;" on one occasion, supervisor stood so close that the plaintiff felt his erection; supervisor "basically sat on top" of plaintiff and rubbed her back; asked her dates; and sent her numerous notes); *Shepherd*, 168 F.3d at 874 (conduct was not pervasive or severe where the plaintiff's co-worker remarked, "[y]our elbows are the same color as your nipples;" said, "you have big thighs" while he simulated looking under the plaintiff's dress; attempted to look down the plaintiff's dress on several occasions, and touched her arm, rubbing one of his hands from her shoulder down to her wrist); *Paul v. Northrop Grumman Ship Sys.*, 309 F. App'x 825 (5th Cir. 2009) (no hostile work environment where a co-worker walked up to the plaintiff until his chest touched her breasts, placed his hand on the plaintiff's stomach and ran his arm around her waist, and "rubbed his pelvic region across [the plaintiff's] hips and buttocks"); *Gibson v. Potter*, 264 F. App'x 397, 398 (5th Cir. 2008) (no hostile work environment where the plaintiff's supervisor "grabbed her on the buttocks and made suggestive comments" to her).

Plaintiff's focus on the April 6, 2012 knife incident is a red herring, because that occurrence was in no way related to sex or gender and Plaintiff has offered no evidence to connect an admittedly criminal assault to his claims of sexual harassment.  At most, Plaintiff has

set forth facts that, if true, demonstrate that Castillo made inappropriate, vulgar and distasteful comments and acted in a boorish manner towards Plaintiff.  Accordingly, Plaintiff's sexual harassment claims fail as a matter of law, and must be dismissed.

## IV.
## CONCLUSION

For the reasons stated herein, Kroger respectfully prays that judgment be entered dismissing all of Salinas's claims against Kroger; that Salinas take nothing against Kroger; and that Kroger recover all costs of suit and its reasonable attorneys' fees, as well as such other and further relief to which it is justly entitled.

23944552\6