IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT SALINAS | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.: 4:14-cv-3153 |
| | § | |
| KROGER TEXAS, L.P., | § | JURY TRIAL DEMANDED |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Respectfully submitted,


 /s/  Francisco  Caycedo
Francisco Caycedo
Texas Bar No. 24040664
Southern District Bar No.: 36976
CAYCEDO LAW, P.C.
14090 Southwest Freeway, Suite 300
Sugar Land, Texas 77478
281.340.2022 (Main)
281.715.5000 (Fax)
frank.caycedo@caycedolaw.com
**ATTORNEY-IN-CHARGE FOR PLAINTIFF**

**OF COUNSEL**:
**Joshua Estes**
Texas Bar No.: 24043651
Federal I.D. No.: 637546
**THE ESTES LAW FIRM, P.C.**
1708 Thompson Rd.
Richmond, Texas 77469
Tel. (281) 238-5400
Fax (281) 238-9964
Email:  joshuaestes@estespc.net

## <u>CERTIFICATE OF SERVICE</u>

A true and correct copy of the foregoing was served on all parties of record via the Court's electronic filing system on August 28, 2015.

_/s/ Francisco J. Caycedo_
Francisco J. Caycedo

## TABLE OF CONTENTS

I.     Summary of Argument ...................................................................................1

II.    Nature and Stage of Proceedings  ...............................................................2

III.   Chronology of Relevant Facts  .....................................................................3

IV.    Standard of Review ........................................................................................9

V.     Legal Arguments and Authorities ..............................................................11

      A.     Evidence Supports Kroger's Liability for Sexual Harassment ...................11

            1.   Same-Sex Standard  ..........................................................12

            2.    Evidence Satisfies Same-Sex Standard  ......................................17

            3.   Evidence Satisfies Severe or Pervasive Standard  ...............................18

            4.   Defendant Knew of Harassment and Failed to Take Action ................21

      B.     Plaintiff's Claims Are Timely  ........................................................23

VI.    Conclusion   ..................................................................................................25

## TABLE OF AUTHORITIES

**Federal Cases**

*Alvarado v. Shipley Donut Flour & Supply Co.,*
    526 F.Supp.2d 746 (S.D. Tex. 2007) ...............................................................20

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ................................................................................10, 11

*Benton v. Kroger Co.,*
    640 F.Supp. 1317, 1321-1322 (S.D.Tex.1986) ...........................................11

*E.E.O.C. v. Boh Bros. Const. Co.,*
    731 F.3d 444, 452 (5th Cir. 2013) ..............................................12, 13, 14, 20

*E.E.O.C. v. WC&M Enters., Inc.,*
    496 F.3d 393, 399 (5th Cir. 2007) ..........................................................19, 23

*Griffin v. City of Dallas,*
    26 F.3d 610 (5th Cir. 1994) .......................................................................23

*Hancock v. Barron Builders & Management Co., Inc.,*
    523 F.Supp.2d 571 (S.D. Tex. 2007) ..........................................................19

*Hernandez v. Yellow Transp., Inc.,*
    641 F.3d 118, 125 (5th Cir. 2011) ...............................................................19

*La Day v. Catalyst Technology,*
    302 F.3d 474, 480 (5th Cir. 2002) ...............................................................13

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986) ...................................................................................10

*Meritor Savings Bank, FSB v. Vinson,*
    477 U.S. 57, 63-67 (1986) ..........................................................................11

*Nat'l R.R. Passenger Corp. v. Morgan,*
    536 U.S. 101, 110 (2002) ............................................................................23

*Oncale v. Sundowner Offshore Services, Inc.,*
    523 U.S. 75, 79 (1998) ..........................................................................11, 12

*Price Waterhouse v. Hopkins*,
    490 U.S. 228 (1989) ................................................................................14

*Reeves v. Sanderson Plumbing Products, Inc.*,
    530 U.S. 133  (2000) ..............................................................................10

*Simmons v. Lyons*,
    746 F.2d 265, 270 (5th Cir.1984)  ........................................................11

*Thornbrough v. Columbus & Greenville R.R. Co.*,
    760 F.2d 633, 640 (5th Cir.1985) .....................................................10, 25

**State Cases**

*Clemon v. Tex. Concrete Materials, Ltd.*,
    07-09-00034-CV, 2010 WL 4105662, at *4 (Tex.App.-Amarillo Oct. 19, 2010, no pet)
    (mem. op)) ........................................................................................10, 25

*Hall v. RDSL Enterprises LLC*,
    2014 WL 656843, at *5 (Tex.App.-Fort Worth, Feb. 20, 2014) ........................ 10, 25

*Twigland Fashions v. Miller*,
    335 S.W.3d 206, 217 (Tex. App. 2010)  ...............................................19

**Statutes**

42 U.S.C. § 2000e-1(a)(1) ..........................................................................11, 23

**Rules**

FED. R. CIV. P. 56(a)....................................................................................10

# I.
## SUMMARY OF ARGUMENT

This is a same-sex sexual harassment case. For several months, David Castillo subjected Mr. Robert Salinas to severe and pervasive sexual harassment while both worked at Kroger. The sexual harassment included David Castillo grabbing Mr. Salinas' buttocks, squeezing his testicles, and making repeated sexually inappropriate comments such as "I prefer to be with a man than a woman," "I will rape you and no one will find out" and "I used to rape guys like you in jail." Mr. Salinas promptly reported these issues to Defendant's management as they occurred, but Defendant failed to investigate or take any remedial action. The predictable result was that Castillo became more brazen and the harassment escalated, culminating in Castillo holding a knife to Plaintiff's throat while at work.

Despite a long history of sexual innuendos, comments and offensive touching, Defendant argues that the knifepoint assault was not sexual harassment because during that isolated incident Castillo did not mention sex. Based on this vacuum-based analytical approach Defendant argues that the majority of Mr. Salinas' complaints of sexual harassment fall outside the statute of limitations. Defendant's argument fails for multiple reasons. Namely, this was a continuing action that culminated in the harasser holding a knife to Mr. Salinas' throat and threatening his life. This final act by the harasser, which contributes to Mr. Salinas' harassment claim, falls within the limitations making his entire claim timely. In similar circumstances courts in the Southern District have denied summary judgment based on limitations.

Defendant also claims the harassment was not "based on sex" or "severe or

pervasive." Any logical evaluation of the facts proves the opposite. The knifepoint assault, which resulted in Castillo's criminal conviction, could hardly have been more severe, and the events preceding that event paint the picture of a man who sexually bullied Mr. Salinas and became increasingly emboldened when Defendant ignored the problem. Short of an actual rape or stabbing, it is difficult to envision a more sexually based and aggressive form of harassment than what Mr. Salinas endured. When the evidence is considered in the light most favorable to Mr. Salinas, as it must be, Supreme Court and Fifth Circuit jurisprudence clearly require denial of Defendant's motion.

Based upon the fact that Mr. Salinas was subjected to a pattern of continuing harassment, Mr. Salinas exhausted his administrative remedies. A plethora of evidence supports his claim for sexual harassment, and there are multiple issues of material fact that can only be properly decided by evaluating issues such as motive and intent, which are questions that are improper for summary judgment and must be decided by a jury. Accordingly, Defendant's motion for summary judgment must be denied.

## II.
### NATURE AND STAGE OF PROCEEDINGS

Plaintiff filed this action on November 5, 2014, setting forth claims for gender discrimination and harassment under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"). Defendant filed a Motion for Summary Judgment seeking dismissal of this lawsuit in its entirety. Mr. Salinas files this response to demonstrate why summary judgment is improper as to his claims for gender discrimination and harassment and why he is entitled to a jury trial. The case is currently set for a docket call on December 18, 2015.

## III.
### CHRONOLOGY OF FACTS

Below is a timeline of facts confirming there are genuine issues of material fact and the need for a trial on the merits. Each fact in the timeline is verified by the evidence attached to this response, including documentary evidence, sworn testimony, and in some instances both.

**<u>The Victim—Robert Salinas</u>**

1.    Mr. Robert Salinas is a 30 plus year employee of Kroger. Defendant hired Mr. Salinas in November 1981, when he was sixteen (16) years old.[1]

2.    Since 1985, Mr. Salinas has worked in the produce department.[2]

3.    Mr. Salinas is a good employee and has never been disciplined for any reason while working at Kroger.[3]

4.    In 2009, Kroger opened Store No. 10, which is located at 2401 Brazos Town Crossing, Richmond, Texas 77471.[4]

5.    On March 25, 2009, Mr. Salinas requested a transfer to Kroger's Store No. 10.[5]

6.    Mr. Salinas requested the transfer to be closer to home to care for his aging and ill mother who lives with him.[6]

7.    In early February 2010, Kroger transferred Mr. Salinas to Store No. 10.[7]

8.    Following his transfer to Store No. 10, Mr. Salinas continued to work in the produce department.[8]

---

[1] <u>Exhibit A</u>, Deposition of Robert Salinas, 75:22-24; 76:7-9.

[2] <u>Exhibit A</u>, Deposition of Robert Salinas, 77:17-78:11; see also <u>Exhibit B</u>, Salinas Work History Report.

[3] *See* <u>Exhibit C</u>, Deposition of Michael Childs, 115:20-116:1; <u>Exhibit D</u>, Deposition of Tony Medina, 146:20-25.

[4] <u>Exhibit C</u>, Deposition of Michael Childs, 26:7-10; 96:16-18.

[5] <u>Exhibit E</u>, Robert Salinas' Transfer Request and Approval.

[6] <u>Exhibit F</u>, 2014 Deposition of Robert Salinas, 42:20-43:11.

[7] <u>Exhibit E</u>, Robert Salinas' Transfer Request and Approval.

[8] <u>Exhibit A</u>, Deposition of Robert Salinas, 77:17-78:11; see also <u>Exhibit B</u>, Salinas Work History Report

**The Harasser-David Castillo**

9.      On or about October 28, 1998, Kroger hired David Castillo.[9]

10.     Among other crimes, David Castillo was convicted of assault in January 1997, less than two years before Kroger hired him.[10]

11.     David Castillo transferred to Store No. 10 when Kroger opened the store.[11]

12.     David Castillo also worked in the produce department at Store No. 10.[12]

13.     The first time Robert Salinas worked with David Castillo on a day-to-day basis was at Store No. 10.[13]

**Castillo's Harassment of Robert Salinas**

14.     Shortly after they began working together, Castillo told Mr. Salinas that he used to be "locked up" and "raped guys" who were Salinas' size.[14]

15.     Castillo told Salinas he would rather be with a man than a woman.[15]

16.     Whenever Castillo walked by Mr. Salinas he would call Salinas derogatory names, such as "faggot" and "gay."[16] This occurred "quite a few times" and happened on "a regular basis."[17]

17.     Castillo also called Mr. Salinas "princess," "mija" (which is Spanish for daughter), and "homosexual."[18]

18.     Castillo also glared at Robert Salinas in a sexual way.  He would look at him up

---

[9] Exhibit G, David Castillo's Application and Date of Hire Form.

[10] Exhibit H, David Castillo's Criminal History Search

[11] Exhibit C, Deposition of Michael Childs, 107:12-25.

[12] Exhibit D, Deposition of Tony Medina, 82:13-16; see also Exhibit A, Deposition of Robert Salinas, 99:22-25.

[13] Exhibit A, Deposition of Robert Salinas, 99:22-25.

[14] Exhibit A, Deposition of Robert Salinas, 57:20-58:5.

[15] Exhibit A, Deposition of Robert Salinas, 57:20-58:5.

[16] Exhibit A, Deposition of Robert Salinas, 147:16-148:5; 340:6-14.

[17] Exhibit A, Deposition of Robert Salinas, 340:6-14.

[18] Exhibit A, Deposition of Robert Salinas, 335:18-336:4; Exhibit D, Deposition of Tony Medina, 101:24-102:25.

and down and wink his eyes at him.[19]

19.    In or around June 2011, Castillo grabbed Mr. Salinas' buttocks while he was bent over and while grabbing it said "When are you going to give me some of that white ass? If you don't give it to me, I'm going to take it anyway. No one is here in the morning, just you and me. I will rape you and no one will find out."[20]

20.    Around September 2011, Castillo approached Mr. Salinas in the cooler/prep room area and forcefully squeezed his testicles.[21]

21.    Mr. Castillo also ran his hands down the middle of Mr. Salinas' "ass crack," bumped into him deliberately, touched and rubbed his back in an unwanted way, and rubbed against him.[22]

22.    As a result of the constant barrage of sexually inappropriate remarks and offensive, unwanted touching, Mr. Salinas genuinely believed Castillo wanted to have sex with him.[23]

23.    While Defendant has requested summary judgment, Defendant concedes each of Plaintiff's allegations of inappropriate touching must be taken as true in deciding whether summary judgment is warranted.[24]

## Kroger's Management

24.    Michael Childs began his employment with Kroger in 1994.[25]

25.    Throughout his entire employment with Kroger, Mr. Childs served as a Store Manager.[26]

26.    Mr. Childs transferred to Store No. 10 when it first opened in December 2009.[27]

27.    At Store No. 10, the Store Manager was the highest level of management,

---

[19] Exhibit A, Deposition of Robert Salinas, 138:17-139:9.

[20] Exhibit A, Deposition of Robert Salinas, 172:17-173:4; 190:25-191:17.

[21] Exhibit A, Deposition of Robert Salinas, 188:13-18; 192:16-193:23.

[22] Exhibit A, Deposition of Robert Salinas, 189:9-15.

[23] Exhibit A, Deposition of Robert Salinas, 188:22-189:15; 337:13-20.

[24] *See* Defendant's Motion for Summary Judgment [Doc. 14], at p. 3, n. 1.

[25] Exhibit C, Deposition of Michael Childs, 34:17-21.

[26] *Id*. at 35:24-36:12.

[27] *Id*. at 37:9-12.

followed by Co-Managers, Department Heads/Managers, and Assistant Department Heads.[28]

28.   As the Store Manager, Childs' responsibilities include overseeing the store's conditions and employee safety.[29]

29.   Mr. Childs admits he is responsible for making sure the workplace is free from any form of harassment and discrimination.[30]

30.   Mr. Childs also admits responsibility for investigating any complaints of harassment.[31]

31.   As a store manager, Childs has the authority to terminate store employees.[32]

32.   Tony Medina started working for Kroger in February 2004, and in 2009 he began working as the Produce Manager at Store No. 10.[33]

33.   Mr. Medina managed both Robert Salinas and Castillo while they worked at Store No. 10.[34]

34.   Mr. Medina admits that as a Produce Manager at Kroger he also has a responsibility to make sure that the workplace is free from sexual harassment.[35]

35.   Mr. Medina also admits that as a member of management, it is important to document all complaints of harassment.[36]

## Defendant's Discrimination and Harassment Policy

36.   Defendant maintained a discrimination and harassment policy acknowledging that any form of harassment undermines employee integrity, is serious misconduct, and that no employee "either male or female" should be subjected to

---

[28] Exhibit C, Deposition of Michael Childs, 41:13-24; 42:16-19.

[29] Id. at 38:17-39:3.

[30] Id. at 39:4-17.

[31] Id. at 39:18-40:5.

[32] Id. at 63:23-25.

[33] Exhibit D, Deposition of Tony Medina, 16:8-14; see also Exhibit C, Deposition of Michael Childs, 19:24-20:5; 26:7-10.

[34] Exhibit D, Deposition of Tony Medina, 82:13-16.

[35] Exhibit D, Deposition of Tony Medina, 82:20-24.

[36] Exhibit D, Deposition of Tony Medina, 28:21-24.

offensive conduct or innuendo from any co-worker or supervisor.[37]

37.   The policy's definition of harassment includes any verbal or physical conduct that "has the purpose or effect of creating an offensive work environment, unreasonably interferes with an individual's work performance, or otherwise adversely affects an individual's work performance."

38.   Childs and Medina both agree with the policy's definition of harassment. Both also agree that any form of harassment is serious misconduct and no employee, including males, should be subjected to harassment.[38]

39.   The harassment policy also mandates that "[a]ll claims of discrimination and harassment will be investigated promptly."[39]

**Defendant's Failure to Respond to Robert Salinas' Complaints**

40.   Salinas reported the derogatory name calling to Tony Medina.[40]

41.   Salinas complained to Childs and Medina when Castillo grabbed his buttocks and said "When are you going to give me some of that white ass? … If you don't give it to me, I'm going to take it anyway.  No one is here in the morning, just you and me.  I will rape you and no one will find out."[41]

42.   When Mr. Salinas complained that Castillo was making comments such as "I used to rape guys your size in jail" and "you have a body like a woman" Medina laughed.[42]

43.   In response to other complaints, Mr. Medina stated "Don't worry, I'll take care of it."[43] At points, Mr. Medina also became angry and told Mr. Salinas that he did not want him going upstairs to management.[44]

44.   After Childs and Medina failed to respond to his complaints, Mr. Salinas then complained to Co-Managers Cecilia Mendoza and Gordana Stjepanovic.[45] Ms.

---

[37] <u>Exhibit L</u>, Harassment Policy.

[38] <u>Exhibit C</u>, Deposition of Michael Childs, 80:24-84:18; <u>Exhibit D</u>, Deposition of Tony Medina, 48:21-49:22.

[39] <u>Exhibit L</u>, Harassment Policy.

[40] <u>Exhibit A</u>, Deposition of Robert Salinas, 147:16-148:5; 158:13-159:10.

[41] *Id.* at 172:17-173:4.

[42] *Id.* at 173:18-174:10.

[43] <u>Exhibit A</u>, Deposition of Robert Salinas, 154:18-155:23.

[44] *Id.*

[45] *Id.* at 176:14-177:16; 315:2-15.

Mendoza simply laughed at Mr. Salinas even though he was crying when he made these complaints.[46]

45.     Mr. Salinas also reported Castillo's offensive and unwanted touching, such as when Castillo squeezed his testicles and grabbed and rubbed his butt. Defendant did nothing about his complaints.[47]

## Culmination of Harassment and Result of Defendant's Failure to Take Action

46.     Left unchecked by Kroger, Castillo's harassment reached dangerous levels. On April 6, 2012, Castillo approached Salinas in the cooler area, grabbed him from behind, and pinned a four to six inch produce knife to Mr. Salinas' throat while threatening his life.[48]

47.     Frustrated by Kroger's inaction to all his prior complaints, and fearing for his life, Mr. Salinas chose to report the incident to the Rosenberg Police Department.[49]

48.     The Rosenberg Police Department ("RPD") promptly initiated an investigation, which included interviews of Mr. Salinas, Castillo, and managers Childs and Medina.[50]

49.     On April 7, 2012, Officer Delgado with the RPD conducted an initial interview with Mr. Salinas. Officer Delgado noted in the report that Mr. Salinas complained that Castillo bullied him, pinched his buttocks, and grabbed his genitals. Mr. Salinas also informed the RPD officer that Castillo would often tell him that he had a feminine body and wanted to be with him.[51]

50.     Officer Delgado also noted that Mr. Salinas reported making complaints to his department manager, Tony Medina, and Store Manager, Michael Childs.[52]

51.     While Defendant contends it never received any complaints of harassment, Officer Delgado noted in his report that Childs admitted Mr. Salinas previously accused Castillo of harassing him at work. Childs further explained to the officer that Castillo pinched Mr. Salinas on the rear end. Mr. Childs could not explain

---

[46] *Id.* at 176:14-22.

[47] *Id.* at 196:10-197:4

[48] Exhibit A, Deposition of Robert Salinas, 203:11-205:21; 209:13-212:10; *see also* Exhibit I, Rosenberg Police Department Incident Report, at SALINAS193.

[49] Exhibit A, Deposition of Robert Salinas, 218:5-219:14

[50] Exhibit I, Rosenberg Police Department Incident Report.

[51] Exhibit I, Rosenberg Police Department Incident Report, at SALINAS193.

[52] *Id.*

how and if Castillo was disciplined.[53]

52.     Childs called Medina to the office while Officer Delgado was present.[54] Officer Delgado noted in his report that "[i]n reference to the allegation of harassment, Mr. Medina advised for a time he was scheduling Mr. Salinas and Mr. Castillo at separates [sic] shifts, but eventually fell away from it and began again scheduling the two working together again."[55]

53.     On April 19, 2012, RPD Officer Monfort interviewed Castillo, who initially denied attacking Salinas.[56] Later during the interview, Castillo admitted he was making more of the "bullying" comments to Salinas on April 6th, and further admitted to placing Salinas in a chokehold while holding the knife to him and saying "I'll cut your head off."[57]

54.     After Castillo signed a Consent to Search Form, RPD entered Castillo's home and retrieved the knife Castillo used, which was property issued by Kroger.[58]

55.     While he was under investigation, Castillo returned to Kroger and brazenly approached Mr. Salinas from behind to tell Mr. Salinas that he was angry that Salinas reported him. The RPD officer noted that Mr. Salinas expressed great concern that Castillo would continue threatening him.[59]

56.     RPD referred the case to the Fort Bend District Attorney's office for prosecution, and on November 26, 2012 Judge Brady Elliot of the 268th Judicial District Court of Fort Bend County, Texas entered a Judgment and Sentence against Castillo, finding him guilty of Aggravated Assault with a Deadly Weapon.[60]

## IV.
### STANDARD OF REVIEW

Summary judgment is proper only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there

---

[53] *Id.*

[54] Exhibit C, Deposition of Michael Childs, 148:2-20.

[55]  Exhibit I, Rosenberg Police Department Incident Report, at SALINAS194.

[56] *Id.* at SALINAS196-197.

[57] *Id.* at 197.

[58] *Id.* at 197-198.

[59] *Id.* at 198.

[60] *Id.*; *see also* Exhibit J, Judgment and Sentence.

is no genuine issue as to any material fact."[61] When considering a motion for summary judgment, all justifiable inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.[62] The Supreme Court has also counseled that in reviewing a summary judgment motion "[T]he court … must disregard all evidence favorable to the moving party that the jury is not required to believe."[63]

The court should not undertake to evaluate the credibility of the witnesses or weigh the evidence.[64] The proper inquiry has a limited focus and the question to be answered is whether the evidence presents sufficient disagreement.[65] Here, there is sufficient disagreement, and any issues concerning credibility or the weight of the evidence should be presented to the jury.

Moreover, in employment discrimination cases, such as this one, summary judgment is usually considered to be an inappropriate tool for resolving cases because the claims involve "nebulous questions of motivation and intent."[66] Typically, motivation and intent can only be proved through circumstantial evidence, and determinations regarding motivation and intent depend on complicated inferences

---

[61] FED. R. CIV. P. 56(a).

[62] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[63] *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 151 (2000).

[64] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[65] *Anderson*, 477 U.S. at 248-49.

[66] *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 640 (5th Cir.1985); *see also Hall v. RDSL Enterprises LLC*, 02-12-00363-CV, 2014 WL 656843, at *5 (Tex.App.-Fort Worth, Feb. 20, 2014) (citing *Clemon v. Tex. Concrete Materials, Ltd.*, 07-09-00034-CV, 2010 WL 4105662, at *4 (Tex.App.-Amarillo Oct. 19, 2010, no pet) (mem. op)). A copy of unpublished cases are attached as Exhibit K.

from the evidence that are peculiarly within the province of the fact-finder.[67] Courts have recognized that it is inherently difficult to determine what evidence might legitimately sway the fact-finder and hence be material. Thus, if any facts are in dispute, summary judgment is inappropriate.[68] Even if the movant satisfies the standards of Rule 56, the trial court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial."[69]

## V.
### LEGAL ARGUMENTS AND AUTHORITIES

**A.      Evidence Supports Kroger's Liability for Sexual Harassment**

Defendant violated Title VII by allowing Robert Salinas to be continually subjected to sexual harassment. Title VII prohibits employers from discriminating against employees on the basis of their gender.[70] Sexual harassment is a species of Title VII sex discrimination.[71] The Supreme Court has also recognized that while "male-on-male sexual harassment in the workplace was assuredly not the principal evil Congress was concerned with when it enacted Title VII" it is certainly a form of discrimination prohibited by Title VII.[72]

Under Title VII, an employer may be liable for harassment by not only a

---

[67] *Id.* at 641.

[68] *Id.*

[69] *Anderson*, 477 U.S. at 255.

[70] 42 U.S.C. § 2000e-1(a)(1).

[71] *See Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 63-67 (1986); *see also Benton v. Kroger Co.*, 640 F.Supp. 1317, 1321-1322 (S.D.Tex.1986) (citing *Simmons v. Lyons,* 746 F.2d 265, 270 (5th Cir.1984)).

[72] *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 79 (1998).

supervisor but also a co-worker.[73] If the harassing employee is the victim's coworker, then the employer is liable if it was negligent in controlling the work environment.[74] Here, Mr. Salinas was subjected to harassment by his co-worker. Thus, Mr. Salinas may establish a Title VII violation by proving that:  (1) he belonged to a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on sex; (4) the harassment affected a "term, condition, or privilege" of employment; and (5) Kroger knew or should have known of the harassment but failed to remedy it.[75]

Without question, Mr. Salinas belongs to a protected class and he was subjected to unwelcome harassment. Thus, Defendant focuses its arguments on contesting the third and fourth elements. As discussed below, Defendant's Motion should be denied because there are material issues of fact regarding whether (1) the harassment was based on Salinas' sex and (2) whether the harassment was severe or pervasive. And although Defendant does not appear to dispute this fact, the evidence also demonstrates Defendant knew or should have known of the harassment and failed to remedy it.

1. <u>Same-Sex Harassment Standard</u>

In *Oncale v. Sundowner Offshore Servs., Inc.*, the Supreme Court enunciated three ways a plaintiff may prove a cognizable same-sex harassment claim: (1) showing that the harasser was homosexual and motivated by sexual desire; (2) showing the harassment was framed "in such sex-specific and derogatory terms … as to make it clear that the harasser [was] motivated by general hostility to the presence" of a

---

[73] *E.E.O.C. v. Boh Bros. Const. Co.*, 731 F.3d 444, 452 (5th Cir. 2013).

[74] *Id.*

[75] *Oncale*, 523 U.S. at 80-81.

particular gender in the workplace; and (3) offering "direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace."[76] In *E.E.O.C. v. Boh Bros. Const. Co., LLC*, the Fifth Circuit held that the three "*Oncale* categories are illustrative, not exhaustive, in nature."[77]

As to the second path, Castillo's comments, which included "faggot," "gay," "princess," and "mija" were framed in very sex-specific terms. In regards to the third path, Defendant's management admits that Castillo only made derogatory comments towards men.[78] These factors help establish the harassment was based on sex.

With respect to the first path articulated in *Oncale*, the Fifth Circuit provided two examples of proof that constitute credible evidence of homosexuality.[79] The first is evidence that the harasser "intended to have some kind of sexual contact with the plaintiff rather than to merely humiliate him for reasons unrelated to sexual interest."[80] The second is evidence that the harasser "made same sex sexual advances to others, especially to other employees."[81] Applying these standards to cases with claims similar to this lawsuit, the Fifth Circuit and federal district courts in Texas have found sufficient evidence to support a claim of same-sex harassment, or at least found enough of a genuine issue of fact to preclude summary judgment. A brief survey of these cases follows below.

---

[76] *Oncale*, 523 U.S. at 80-81.

[77] *Boh Bros.*, 731 F.3d at 455.

[78] Exhibit D, Deposition of Tony Medina, 217:10-21.

[79] *La Day v. Catalyst Technology*, 302 F.3d 474, 480 (5th Cir. 2002).

[80] *Id.*

[81] *Id.*

13

In *Boh Brothers*, the Fifth Circuit found sufficient evidence to support a same-sex harassment claim, where the harasser repeatedly used sex-based epithets such as "faggot," "pussy," and "princess." [82] In reaching its decision, the court reiterated the long established rule that a plaintiff may rely upon gender-stereotyping evidence to show discrimination occurred because of sex.[83] The Fifth Circuit found that monikers such as "faggot" and "princess" "lend themselves to a reasonable inference on the part of the jury that [the harasser] viewed [the plaintiff] as insufficiently masculine."[84]

Here, Castillo used some of the same monikers found in *Boh Brothers*. Castillo repeatedly called Mr. Salinas names such as "faggot" and "princess."[85] Mr. Medina admits that he has no knowledge as to what Castillo's perceptions of Mr. Salinas were, and he could not testify one way or the other whether he was using those words to question Mr. Salinas' masculinity.[86] Mr. Medina, however, does admit he has heard the term "faggot" and "princess" used to question a man's masculinity.[87] Considering the totality of the circumstances, it is reasonable for a jury to conclude Castillo's name calling was a way to question Mr. Salinas' sexuality or failure to conform to traditional male stereotypes. This evidence standing alone is sufficient to demonstrate the harassment was "based on sex." There is also additional evidence and legal authority supporting the harassment was based on sex.

---

[82] *Boh Bros.*, 731 F.3d at 459-60.

[83] *Boh Bros.*, 731 F.3d at 453-454 (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989)).

[84] *Boh Bros.*, 731 F.3d at 457, n. 12.

[85] Exhibit A, Deposition of Robert Salinas, 147:16-148:5; 340:6-14.

[86] Exhibit D, Deposition of Tony Medina, 109:11-19.

[87] Exhibit D, Deposition of Tony Medina, 106:17-107:-19.

14

In *La Day v. Catalyst Technology*, the plaintiff presented evidence that the same-sex harasser told him that he was jealous of his girlfriend and "poked" him in the anus on one occasion.[88] The court found that construing this evidence in the light most favorable to the plaintiff, it was reasonable to conclude such behavior constituted "'explicit or implicit proposals of sexual activity.'"[89] As a result, the Fifth Circuit reversed and remanded the trial court's summary judgment in favor of the employer on the plaintiff's same-sex sexual harassment claim.[90]

In *Cherry v. Shaw Coastal, Inc.*, the plaintiff alleged same-sex sexual harassment.[91] On appeal, the Fifth Circuit found the trial court erred in granting judgment as matter of law in favor of the employer on the plaintiff's sexual harassment claim.[92] In reaching this decision, the court noted the harasser text messaged the plaintiff messages such as "I want cock," physically touched the plaintiff's body, and suggestively stared at the plaintiff, which made the plaintiff feel uncomfortable.[93] The Fifth Circuit found this evidence sufficient to support the male employee's sexual harassment claim.[94]

In *Pinedo v. Alliance Inspection Management*, the Court denied a defendant's motion for summary judgment on a same-sex sexual harassment claim.[95] In *Pinedo*, the plaintiff testified that the harasser made "sexual references" and "sexual gestures"

---

[88] *Id.* at 481

[89] *Id.* (quoting *Oncale*, 523 U.S. at 80).

[90] *Id.* at 483-485.

[91] *Cherry v. Shaw Coastal, Inc.*, 668 F.3d 182, 188 (5th Cir. 2012).

[92] *Id.* at 189-90.

[93] *Id.*

[94] *Id.* at 188.

[95] *Pinedo v. Alliance Inspec. Mgmt., LLC*, No. EP-14-CV-195-KC, 2015 WL 3747426, *16 (W.D. Tex. Jun. 4, 2015). A copy of this case is attached as <u>Exhibit K</u>.

towards him.[96] The plaintiff also offered evidence that the harasser threatened the plaintiff with rape.[97] The defendant attempted to marginalize this evidence by arguing that the harasser never acted on his threats. The court found that argument failed, noting that "rape necessarily involves some form of sexual contact, and serious threats of the same are consistent with the inference that a harasser's conduct was motivated, at least in part, by sexual desire."[98] Considering this evidence, the trial court determined that a fact issue existed as to whether the harasser's conduct towards the plaintiff was because of sex.[99] Here, Castillo threatened Mr. Salinas with rape, which itself is sufficient evidence to show the harassment was based on sex.

In *Pinedo*, the trial court also noted there was countervailing evidence suggesting that the harasser's treatment was not motivated by sexual desire.[100] The derogatory references to the plaintiff as "joto" and "marica" could demonstrate a bias *against* homosexuality. The court noted that such anti-gay bias does not foreclose the possibility that the harasser himself was homosexual. The court further noted: "this Court cannot weigh evidence in the context of a summary judgment motion. *Thus, while it is 'of course possible that [the harasser] was simply mocking [the plaintiff],' '[a] fact finder ultimately will have to decide which side has the greater weight of the evidence.'"*[101]

---

[96] *Pinedo*, 2015 WL 3747426 at *10.

[97] *Id.*

[98] *Id.* (citing *Oncale*, 523 U.S. at 77, 82)

[99] *Id.*

[100] *Id.* at 11.

[101] *Id.* (internal citations omitted) (emphasis added).

2.    <u>Evidence Satisfies Same-Sex Harassment Standard</u>

Here, the harasser, David Castillo, stared at Plaintiff up and down, winked at him, grabbed his buttocks, and squeezed his testicles.[102] He also made statements such as "You don't know me but I've been locked up, and I raped guys your size," "I'm going to rape you," "I used to rape guys like you in prison," and "I prefer being with men."[103] This evidence is more significant than that set forth in *La Day* and *Cherry*, and demonstrates Castillo's harassment of Salinas was based upon sex. At a minimum it creates a genuine issue of material fact concerning this issue, and any questions of intent, motivation, credibility, or weight of the evidence should be left to a jury to decide.

Defendant attempts to minimize Castillo's actions as simple attempts to embarrass, and then based on this suggests that no inference of sex-based harassment can be made. As a preliminary matter, Defendant failed to offer any conclusive evidence regarding Castillo's intent or motivation, rather Defendant offers mere speculation. Mr. Salinas, who is the only one to actually experience the harassment first hand, testified that not only did he feel ashamed, embarrassed and hurt by the Castillo's harassment,[104] but also Castillo's comments and actions *were* sexual in nature.[105]

> Q:    Okay. Do you – do you believe that David Castillo actually wanted to have sex with you?
> A:    Yes.[106]

---

[102] <u>Exhibit A</u>, Deposition of Robert Salinas, 63:15-22; 138:17-139:9.

[103] <u>Exhibit A</u>, Deposition of Robert Salinas, 57:20-58:5.

[104] *Id.* at 336:21 – 337:7.

[105] *Id.* at 57:20-58:5; 58:23-59:4; 188:22-189:15; 337:13-338:3.

[106] *Id.* at 188:22-24.

| | |
|---|---|
| Q: | What names did Mr. Castillo call you while y'all were both working at Kroger? |
| A: | He called me faggot. |
| Q: | What other names did he call you? |
| A: | Gay. |
| Q: | And I know it may be difficult, but just tell me all the names that David Castillo called you while y'all were both working at Kroger. |
| A: | He called me "princess" and "mija." |
| Q: | Any other names that you recall David calling you while y'all worked at Kroger? |
| A: | He called me a homosexual.[107] |
| … | |
| Q: | Why do you believe he was calling you those names? |
| A: | Because he was making those sexual remarks because he wanted to be with me. |
| Q: | And why do you say that? |
| A: | Because he kept touching me. He touched me and grabbed me. |
| Q: | When he touched you and grabbed you, how did that make you feel? |
| A: | Very dirty. |
| Q: | Did you think the touching was funny? |
| A: | No. |
| Q: | Did you think the touch was just horseplay between you and he? |
| A: | No. It's horrible. …[108] |

Clearly, Mr. Salinas described events that far exceed horseplay or simple teasing. While Defendant alleges that Mr. Salinas and Castillo joked around and made fun of each other, Mr. Salinas denies referring to Castillo by any of the demeaning, sexual names that Castillo regularly called him.[109] As noted in *Pinedo*, any discrepancies in the evidence should be left to the jury to determine. [110]

    3.    <u>Evidence Satisfies Severe or Pervasive Standard</u>

In a hostile work environment claim under Title VII, such as this case, a plaintiff

---

[107] <u>Exhibit A</u>, Deposition of Robert Salinas, 335:18–336:4

[108] *Id.* at 337:13-338:3.

[109] *See e.g.*, Exhibit A, Deposition of Robert Salinas, 148:20-149:1.

[110] *Id.* (internal citations omitted).

may successfully show the harassment affected a term, condition or privilege of employment if he or she shows the harassment was "severe *or* pervasive."[111] A plaintiff may establish the harassment was either severe or pervasive, but need not establish both.[112] In fact, a single incident of harassment, if sufficiently severe, could give rise to a viable claim under Title VII.[113]

A term, condition or privilege of employment is effected when the workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.[114] In determining whether a term, condition, or privilege of employment has been affected, courts consider the totality of the circumstances, including whether the discriminatory conduct is threatening or humiliating and whether it unreasonably interferes with an employee's work performance.[115] No single factor is required and even if the harassment is infrequent, it may be deemed to alter terms, conditions, or privileges of employment if it is especially egregious.[116]

In *Boh Bros.*, the Fifth Circuit held that the harasser's conduct towards the plaintiff was sufficiently severe or pervasive. The male plaintiff was harassed by a male

---

[111] *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (emphasis added); *see also E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 399 (5th Cir. 2007).

[112] *WC&M Enters., Inc.*, 496 F.3d at 399-400.

[113] *Id.* at 400.

[114] *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 399 (5th Cir. 2007); *see also Twigland Fashions v. Miller*, 335 S.W.3d 206, 217-18 (Tex. App. 2010) (citing *Harris v. Forklift Sys., Inc.* 510 U.S. 17, 21 (1993)).

[115] *Hernandez v. Yellow Transp., Inc.*, 641 F.3d 118, 125 (5th Cir. 2011); *see also Hancock v. Barron Builders & Management Co., Inc.*, 523 F.Supp.2d 571 (S.D. Tex. 2007).

[116] *Twigland*, 335 S.W.3d at 222.

co-worker at a construction site and was called "faggot," "pussy," and princess.[117] The harasser also simulated intercourse with the plaintiff by "dry humping" the plaintiff from behind as the plaintiff was bent over, and told the plaintiff he wanted to stick his penis inside his mouth.[118] The court reasoned that because the plaintiff was the constant target of the harasser's abuse it was reasonable to conclude the harassment was sufficiently severe or pervasive to alter the condition of the plaintiff's employment.[119]

Even in cases with much less severe or pervasive behavior, courts have denied summary judgment. In *Alvarado v. Shipley Donut Flour & Supply Co.*, multiple plaintiffs filed suit alleging discrimination and a hostile work environment under Title VII.[120] The defendant moved for summary judgment and argued, in part, that the harassment was not severe or pervasive enough to be actionable.[121] Judge Atlas, of the Southern District of Texas, denied the defendant's motion for summary judgment on the harassment/hostile work environment claim.[122] In do so, Judge Atlas noted that "[o]n the issue of severity, Plaintiff's allegations of physical assault and sexual touching create a fact issue that precludes summary judgment." [123]

Here, we have both a physical assault and sexual touching like the plaintiffs in *Alvarado*. Castillo grabbed Mr. Salinas' buttocks, ran his hand down his backside,

---

[117] *Boh Bros.*, 731 F.3d at 449, 457.

[118] *Id.* at 449-50, 459.

[119] *Id.* at 462.

[120] *See Alvarado v. Shipley Donut Flour & Supply Co.*, 526 F.Supp.2d 746 (S.D. Tex. 2007).

[121] *Alvarado*, 526 F.Supp.2d at 759-60.

[122] *Id.*

[123] *Id.*

squeezed his testicles, and held a knife to his throat while having him in a chokehold.[124] Ultimately, Mr. Castillo was convicted of aggravated assault with a deadly weapon.[125] Each of these acts is independently severe, but when viewed in totality they absolutely create a genuine fact issue as whether the harassment was severe or pervasive enough to create a hostile work environment. Furthermore, Castillo called Mr. Salinas names such as gay, princess, mija, little girl, and homosexual.[126] He also called Mr. Salinas faggot on a regular basis.[127] Mr. Salinas testified that Castillo's remarks made him feel less of a man, ashamed, embarrassed, and hurt.[128] Mr. Salinas testified that as a result of the harassment he would often cry, have stomach problems and had to see a psychiatrist.[129] Further demonstrating the severity of the harassment he endured, Mr. Salinas testified that when he uses the restroom at Kroger he now uses the private family restroom because he doesn't trust anyone and prefers to be alone, and he also scares easy and does not go anywhere other than home and work.[130] Given the totality of the circumstances, the harassment is sufficiently severe to have been abusive not only for Mr. Salinas, but for any reasonable person in his place.

4.   <u>Kroger Knew of Harassment and Failed to Take Remedial Action</u>

Mr. Salinas was adamant that he complained of the harassment he endured.[131]

---

[124] *See supra* notes 14-23.

[125] <u>Exhibit J</u>, Judgment and Sentence, at SALINAS201-202.

[126] <u>Exhibit A</u>, Deposition of Robert Salinas, 335:18 – 336:16

[127] *Id.* at 340:6-14.

[128] *Id.* at 335:18-337:2.

[129] *Id.* at 267:21-268:1; 308:21-309:4; 310:20-311:4.

[130] *Id.* at 312:3-21.

[131] *See supra* notes 40-45.

Not only did he complain each time he was touched inappropriately, but he also complained each time Castillo made sexually inappropriate remarks or called him offensive names. Despite his repeated complaints, Defendant failed to take any action to remedy the situation.[132] Childs and Medina both stated they were not aware of Mr. Castillo ever being disciplined.[133] Childs had the authority to terminate employees, yet even after Castillo held a knife to Mr. Salinas' throat, Childs did not terminate Castillo. Instead, Castillo was allowed to resign.

In an attempt to avoid liability, Defendant's managers claim they never received any complaints from Mr. Salinas. This major factual dispute is itself significant enough to create a genuine issue of material fact precluding summary judgment. Further, the evidence demonstrates that Defendant's testimony concerning its lack of knowledge is not credible, creating another issue for the jury.

Following the culmination of Castillo's harassment on April 6, 2012, the Rosenberg Police Department conducted an investigation. During the course of its investigation, both Mr. Childs and Mr. Medina admitted to the investigating officer that they received a complaint from Mr. Salinas regarding harassment by Castillo.[134] In fact, they were able to provide so much detail as to confirm Mr. Salinas' complaint that Castillo grabbed Salinas' buttocks. Mr. Childs and Mr. Medina, however, could not tell the officer whether any disciplinary action was taken. Reviewing this evidence in its

---

[132] *Id.*

[133] <u>Exhibit C</u>, Deposition of Michael Childs, 106:24-107:4; <u>Exhibit D</u>, Deposition of Tony Medina, 89:12-90:5. Defendant's negligence is also demonstrated by failing to conduct a criminal background check on Castillo and allowing him to work with knives after being convicted of assault. See <u>Exhibit H</u>.

[134] <u>Exhibit I</u>, Rosenberg Police Department Incident Report at SALINAS193.

totality, a reasonable juror could conclude that Mr. Salinas reported the harassment and Defendant failed to take any remedial action.

**B.     Plaintiff's Claims are Timely**

In another effort to avoid trial, Defendant argues that Mr. Salinas' claims are barred by limitations. Defendant's argument, however, fails as a matter of law. Castillo's unhindered harassment, which occurred under Defendant's supervision, ultimately culminated in Castillo assaulting Mr. Salinas on April 6, 2012. Mr. Salinas filed his charge of discrimination with the EEOC on January 10, 2013, which was within 300 days of the harasser's parting and final shot.

As a prerequisite to a Title VII claim, a person claiming unlawful discrimination must file a charge of discrimination with the EEOC within 300 days "after the alleged unlawful employment practice occurred." [135] The Supreme Court, however, has recognized that when a plaintiff brings a claim for harassment or hostile work environment, only one component act of the hostile environment claim need be within the filing period:

> A hostile work environment claim is composed of a series of separate acts that collectively constitute one "unlawful employment practice." 42 U.S.C. § 2000e-5(e)(1). The timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.[136]

---

[135] *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 398 (5th Cir. 2007); *Griffin v. City of Dallas*, 26 F.3d 610 (5th Cir. 1994).

[136] *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002).

Defendant claims Mr. Salinas has failed to show that "actionable" harassment occurred during the limitations. Defendant, however, cannot dispute the April 6th incident occurred within limitations. As discussed in detail above, a single incident can be severe enough to be deemed actionable harassment. Furthermore, when determining whether an act is sexual in nature the totality of the circumstances must be considered. When Castillo's conduct is viewed in its totality, it is reasonable for a jury to determine that the April incident was an escalation of Castillo's prior harassment, was sexual in nature, and also a foreseeable result of Castillo's prior and unfettered sexual harassment.

Furthermore, Defendants attempt to deny the sexual nature of the April 2012 incident ignores the victim's testimony. On this issue, Mr. Salinas testified as follows:

Q:      So you felt like the – the events of April 6th was more of a violent act
         against you, not a sexual act, right?
…
A.      *It was both.*
…
A.      *He wanted – he wanted these things from me he couldn't get from me, that he*
         *wanted from me. And – and that's why he – he'd do – he'd do that to me.*
Q:      Okay.
A:      I can't give him that.  I'm a man.  I can't do that with him.[137]

Defendant relies upon *Pegram v. Honeywell, Inc.*, which was a race discrimination case that noted one-time employment events such as failure to hire or promote are discrete actions that may constitute an unlawful employment practice.[138] This is clearly distinguishable from a hostile work environment claim that is composed of a series of acts. In *Arredondo v. Estrada,* No. 2:14-CV-170, 2015 WL 4523545, at *3-4 (S.D. Tex. Jul 27,

---

[137] <u>Exhibit A</u>, Deposition of Robert Salinas, 320:16 – 321:19 (emphasis added).

[138] *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 280 (5th Cir. 2004).

2015), a much more analogous case, a sister court in the Southern District denied summary judgment on a limitations argument against a sex discrimination claim.

Ultimately, Defendant can definitively state what Castillo's intent or motivation was on April 6th. The issue of Mr. Castillo's motivation and intent is one for a jury's consideration. [139] Typically, motivation and intent can only be proved through circumstantial evidence, and determinations regarding motivation and intent depend on complicated inferences from the evidence that are peculiarly within the province of the fact-finder.[140]

## VI.
### CONCLUSION

For the reasons set forth above, Defendant has not shown itself entitled to summary judgment. The applicable legal authorities demonstrate that Mr. Salinas' claims are timely. Furthermore, Mr. Salinas has set forth sufficient evidence to demonstrate the harassment he suffered was based on his sex and was severe and pervasive. At a minimum, there are genuine issues of material fact concerning these issues and any discrepancies in the evidence or credibility concerns are for a jury's scrutiny, not summary judgment. Therefore, Defendant's motion for summary judgment should be denied in its entirety.

---

[139] *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 640 (5th Cir.1985) (noting summary judgment is usually considered to be an inappropriate tool for resolving claims involving "nebulous questions of motivation and intent."); *see also Hall v. RDSL Enterprises LLC*, 02-12-00363-CV, 2014 WL 656843, at *5 (Tex.App.-Fort Worth, Feb. 20, 2014) (citing *Clemon v. Tex. Concrete Materials, Ltd.*, 07-09-00034-CV, 2010 WL 4105662, at *4 (Tex.App.-Amarillo Oct. 19, 2010, no pet) (mem. op)).

[140] *Id.* at 641.