United States District Court
Southern District of Texas
**ENTERED**
February 12, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT SALINAS, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-14-3153 |
| | § | |
| KROGER TEXAS, L.P., | § | |
| | § | |
| *Defendant*. | § | |

**MEMORANDUM OPINION & ORDER**

Pending before the court is defendant Kroger Texas, L.P.'s ("Kroger") motion for summary judgment. Dkt. 14. Having considered the motion, response, reply, and applicable law, the court is of the opinion that the motion should be DENIED.

**I. BACKGROUND**

Plaintiff Robert Salinas ("Salinas") began working for Kroger in November of 1981. Dkt. 20 at 3. In October of 1998, Kroger hired David Castillo ("Castillo"). *Id.* at 4. In 2009, Castillo transferred to Store No. 10, where he worked in the produce department. *Id.* In February of 2010, Salinas transferred to Store No. 10, where he also worked in the produce department. *Id.* at 3.

After Salinas and Castillo began working together at Store No. 10, Castillo began making inappropriate comments to Salinas. *Id.* Castillo referred to Salinas as "faggot," "gay," "homosexual," "princess," "little girl," and "mija" (Spanish for "daughter"). Dkt. 20, Ex. A at 335–40. Castillo told Salinas that (1) he had "been locked up" and had "raped guys [Salinas's] size," (2) he would rather be with a man than a woman, and (3) Salinas had a body like a woman. *Id.* at 57–58.

On several occasions, Castillo touched Salinas in an inappropriate manner while at work. In June of 2011, Castillo "grabbed [Salinas's] butt" and said: "When are you going to give me some of that white ass? If you don't give it to me, I'm going to take it away. No one is here in the morning, just you and me. I will rape you and no one will find out." *Id.* at 172. In September of 2011, Castillo grabbed Salinas's testicles and said: "When are you going to give me some?" *Id.* at 188. In another instance, Castillo "ran his hand down [Salinas's] ass crack." *Id.* at 194. Salinas complained about Castillo's behavior to multiple members of Kroger's management, but management did not respond to his concerns. Dkt. 20 at 7–8. In November of 2011, Castillo stopped making inappropriate sexual contact with Salinas. Dkt. 14, Ex. 4 at 77.

On April 6, 2012, Castillo grabbed Salinas from behind, placed his arm around Salinas's neck, and put a produce knife to Salinas's throat. Dkt. 20, Ex. A at 203, 210–12. Salinas pushed Castillo's arm away and escaped. *Id.* at 210–13. The following day, Salinas reported the incident to the Rosenberg Police Department. Dkt. 20, Ex. I at 1–2. On April 19, 2012, Castillo gave a voluntary statement to the police and admitted to the April 6 assault. *Id.* at 7–8. On April 19, 2012, Castillo resigned from his job at Kroger. Dkt. 14, Ex. 6 at 211–12. On November 26, 2012, Castillo was convicted of aggravated assault with a deadly weapon as a result of his April 6 attack on Salinas. Dkt. 20, Ex. J.

On January 10, 2013, Salinas filed a charge of sex discrimination with the Equal Employment Opportunity Commission ("EEOC"). Dkt. 14, Ex. 9. On November 5, 2014, Salinas filed this lawsuit, bringing a sexual harassment claim against Kroger under Title VII of the Civil Rights Act of 1964. Dkt. 1. On July 28, 2015, Kroger filed the pending motion for summary judgment. Dkt. 14.

## II. LEGAL STANDARD

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). If the party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). The court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dall., Tex.*, 529 F.3d 519, 524 (5th Cir. 2008).

## III. ANALYSIS

Salinas's sexual harassment claim arises under Title VII of the Civil Rights Act of 1964. Dkt. 1. Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment" because of that individual's sex. 42 U.S.C. § 2000e-2(a)(1). Sexual harassment is a form of discriminatory treatment. *Cherry v. Shaw Coastal, Inc.*, 668 F.3d 182, 188 (5th Cir. 2012) (citing *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 81, 118 S.Ct. 998 (1998)). Sexual harassment is actionable under Title VII "in any situation where there is discrimination 'because of' sex, whether it be between members of the same or opposite sexes." *Id.*

In evaluating same-sex sexual harassment claims, the court follows a two-step inquiry. *E.E.O.C. v. Boh Bros. Constr. Co.*, 731 F.3d 444, 453 (5th Cir. 2013). First, the court determines whether the harassment constitutes discrimination "because of sex." *Id.* Second, the court evaluates

3

whether the conduct meets the applicable standards for either a quid pro quo or hostile work environment claim. *Id.*

**A.     Discrimination "Because of Sex"**

In same-sex sexual harassment cases, a plaintiff may establish that the harassment occurred "because of sex" in three primary ways:

> (1) a plaintiff may show that the harasser was homosexual and motivated by sexual desire;
> (2) a plaintiff may show that the harassment was framed in such sex-specific and derogatory terms . . . as to make it clear that the harasser [was] motivated by general hostility to the presence of a particular gender in the workplace; and
> (3) a plaintiff may offer direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace.

*Boh Bros.*, 731 F.3d at 455 (alterations in original) (internal quotation marks omitted) (citing *Oncale*, 523 U.S. at 80–81). However, these three approaches are illustrative, not exhaustive. *Id.* at 455–56. A plaintiff may also satisfy Title VII's "because of sex" requirement with "evidence of a plaintiff's perceived failure to conform to traditional gender stereotypes." *Id.* at 454–56.

In this case, Salinas has focused primarily on showing (1) that Castillo was motivated by sexual desire and, to a lesser to extent, (2) that Castillo targeted Salinas because of Salinas's perceived failure to conform to traditional male stereotypes. Dkt. 20 at 12–18.

**1.     Motivated by Sexual Desire**

To support a theory that the harasser was motivated by sexual desire in a same-sex sexual harassment case, a plaintiff must produce "credible evidence that the harasser was homosexual." *Oncale*, 523 U.S. at 80. The Fifth Circuit has identified two types of evidence that can serve as "credible evidence of homosexuality": (1) "evidence suggesting that the harasser intended to have some kind of sexual contact with the plaintiff rather than merely to humiliate him for reasons

4

unrelated to sexual interest," or (2) "proof that the alleged harasser made same-sex sexual advances to others, especially to other employees." *La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 480 (5th Cir. 2002). In this case, Salinas has produced no evidence that Castillo made same-sex sexual advances to any other person or employee. Therefore, Salinas relies on the theory that Castillo had a legitimate sexual interest in him. Dkt. 20 at 17–18.

Kroger argues that there is insufficient evidence in the record to suggest that Castillo was homosexual or was motivated by sexual desire. Dkt. 14 at 12. Kroger takes the position that Castillo's conduct was merely "workplace horseplay" with sexual overtones, not actionable sexual harassment. *Id.* at 13–14. Kroger notes that there is significant evidence in the record that would contradict any suggestion that Castillo was homosexual. *Id.* at 13. In response, Salinas argues that Castillo's sexually charged comments and inappropriate touching constitute sufficient evidence that Castillo's harassment was motivated by sexual desire. Dkt. 20 at 16–17.

The court finds that Salinas has produced enough evidence to raise a fact issue for the jury regarding Castillo's motivation. The Fifth Circuit has found comparable evidence to be sufficient to raise a jury question. In *La Day*, plaintiff Patrick La Day brought a Title VII claim against his employer, alleging that he was sexually harassed by his supervisor, Willie Craft. 302 F.3d at 476. Craft allegedly told La Day that he was jealous of La Day's girlfriend, touched La Day's anus on one occasion, and spit on La Day after La Day reported him. *Id.* Unlike in this case, there was evidence in *La Day* that two other male employees had made similar complaints about Craft. *Id.* at 477. However, the court also found that "[u]ndoubtedly there is credible evidence of Craft's sexual interest in La Day . . . His remark that he was 'jealous' of La Day's girlfriend, combined with his poking of La Day's anus, easily is susceptible of that interpretation." *Id.* at 480. The defendant in *La Day* argued that, even if the evidence established Craft was homosexual, there was no proof that

5

Craft made sexual advances to La Day. *Id.* at 481. The court rejected that argument, finding that "if the evidence is viewed in the light most favorable to La Day, it is reasonable to conclude that Craft's touching of La Day's anus, and his earlier expressed jealousy toward La Day's girlfriend, constituted 'explicit or implicit proposals of sexual activity.'" *Id.* (quoting *Oncale*, 523 U.S. at 80). The court therefore reversed the district court's grant of summary judgment to the defendant. *Id.* at 481–83.

By comparison, Castillo's sexual conduct toward Salinas is arguably more significant than Craft's conduct in *La Day*. Although there are no reports of incidents involving other employees in this case, there are more instances of inappropriate touching and more sexual statements here than in *La Day*. Castillo touched Salinas in a sexual manner on three separate occasions. Dkt. 20, Ex. A at 172, 188, 194. On two of these occasions, Castillo asked Salinas: "when are you going to give me some?" *Id.* at 172, 188; *see La Day*, 302 F.3d at 480 ("A harasser may well make sexually demeaning remarks and putdowns to the plaintiff for sex-neutral reasons . . . but he is far less likely to make sexual *advances* without regard to sex."). Further, Castillo told Salinas that he would rather be with a man than a woman and that he had raped other men. Dkt. 20, Ex. A at 57–58. Importantly, Castillo also made an explicit threat that he would rape Salinas. *Id.* at 172; *see Pinedo v. All. Inspection Mgmt., LLC*, No. 14-CV-195, 2015 WL 3747426, at *10 (W.D. Tex. June 14, 2015)(explaining that, where the harasser threatened the plaintiff with rape but never physically touched the plaintiff, "rape necessarily involves some form of sexual contact, and serious threats of the same are consistent with the inference that a harasser's conduct was motivated, at least in part, by sexual desire"). These statements are clearly sexual in nature and are significantly less ambiguous than the "jealousy" remark that the court relied on in *La Day*. When the evidence is viewed in the

6

light most favorable to Salinas, a reasonable jury could conclude that Castillo's sexually charged comments and inappropriate touching of Salinas indicate legitimate sexual desire.

As Kroger has pointed out, there is certainly evidence in this case that would suggest Castillo was not homosexual or motivated by sexual desire. Salinas testified that he was aware Castillo had a wife and multiple children and that Castillo had spoken about his extramarital affairs with women. Dkt. 14, Ex. 1 at 53–57. Salinas also noted that Castillo would make remarks when an attractive female customer would come in the store and that Castillo had once made a crude sexual comment about a female co-worker. *Id.* at 62–63. In light of this evidence, a jury may conclude that Castillo intended to harass Salinas but did not act out of genuine sexual desire for him. It is the jury's role, however, to weigh the evidence and to make that determination:

> A jury might decide, for example, that [the harasser] was not at all interested in [the victim] sexually, but made these types of remarks and engaged in this type of behavior simply because he was exceedingly crude and/or because he knew that this type of sexually-charged conduct would make [the victim] uncomfortable. What to make of [the harasser's] behavior (assuming that it occurred as [the victim] described it) is a task that requires one to weigh the tone and nuances of his words and deeds and a host of other intangibles that the page of a deposition or an affidavit simply do not reveal. This is a task for the factfinder after trial, not for the court on summary judgment.

*Shepherd v. Slater Steels Corp.*, 168 F.3d 998, 1010 (7th Cir. 1999); *see also La Day*, 302 F.3d at 480 ("It is of course possible that Craft was simply mocking La Day; on summary judgment, however, 'we must assume the facts to be as alleged by [the plaintiff]' . . . A fact finder ultimately will have to decide which side has the greater weight of the evidence." (quoting *Oncale*, 523 U.S. at 76)); *cf. Alvarado v. Shipley Donut Flour & Supply Co.*, 526 F. Supp. 2d 746, 758 (S.D. Tex. 2007) (Atlas, J.) (collecting cases explaining that, where discriminatory motivation is at issue, the jury is in the best position to evaluate the evidence and make credibility determinations). Therefore,

the court finds that Salinas has presented sufficient evidence to raise a genuine issue of material fact regarding whether Castillo was motivated by sexual desire.

### 2. Gender Stereotyping

Salinas has also argued that Castillo's harassment of Salinas was motivated by Salinas's "failure to conform to traditional male stereotypes." Dkt. 20 at 14. There is evidence in the record to support this theory. Castillo called Salinas "faggot," "gay," "homosexual," "princess," "little girl," and "mija" (Spanish for "daughter"), and stated that Salinas had a "body like a woman." Dkt. 20, Ex. A at 57–58, 335–40. A jury could reasonably interpret these comments as a reflection of Castillo's belief that Salinas was not sufficiently masculine. Courts have found that similar comments were sufficient to allow a jury to conclude that the harasser was motivated by the victim's failure to conform to male stereotypes. *See Boh Bros.*, 731 F.3d at 457 & n.12 (holding that the harasser's use of "sex based epithets" like "faggot," "pussy," and "princess" "lend themselves to a reasonable inference on the part of the jury that [the harasser] viewed [the victim] as insufficiently masculine"); *Pinedo*, 2015 WL 3747426, at *10 (holding that a jury could conclude from the harasser's use of Spanish slang terms for "gay" and "faggot" that the harasser "disliked [the victim] because he failed to conform to [the harasser's] stereotyped expectations of masculinity"). Therefore, the court finds that Salinas has produced sufficient evidence supporting his sexual desire and gender stereotyping theories to raise a jury question regarding whether the harassment constitutes discrimination "because of sex."

### B.    Quid Pro Quo or Hostile Work Environment

Having found sufficient evidence that the harassment occurred "because of sex," the court must also determine whether the harassment satisfies the standards for either a quid pro quo or hostile work environment claim. A quid pro quo claim arises when the plaintiff has suffered a

"tangible employment action," such as a termination. *Russell v. Univ. of Tex. of Permian Basin*, 234 F. App'x 195, 201 (5th Cir. 2007) (per curiam). Here, Salinas has not alleged a tangible employment action; therefore, his claim proceeds under a hostile work environment theory. *Id.*

Where the alleged harasser is a co-worker, a plaintiff in a hostile work environment claim must establish that (1) he belongs to a protected group; (2) he was subject to unwelcome sexual harassment; (3) the harassment complained of was "because of sex"; (4) the harassment affected a term, condition, or privilege of his employment; and (5) his employer knew or should have known of the harassment and failed to take prompt remedial action. *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 325 (5th Cir. 2004). In addition to the "because of sex" element discussed above, Kroger also disputes whether the harassment was sufficiently severe or pervasive to affect a term, condition, or privilege of Salinas's employment. Dkt. 14 at 16.

"To affect a term, condition, or privilege of employment, the harassment 'must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 479 (5th Cir. 2008) (alteration in original) (quoting *Lauderdale v. Tex. Dep't of Criminal Justice, Institutional Div.*, 512 F.3d 157, 163 (5th Cir. 2007)). "Whether an environment is hostile or abusive depends on the totality of the circumstances, including factors such as the frequency of the conduct, its severity, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." *Septimus v. Univ. of Hous.*, 399 F.3d 601, 611 (5th Cir. 2005) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22, 114 S. Ct. 367 (1993)). "The environment must be deemed 'both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'" *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 786, 118 S. Ct. 2275 (1998)).

Kroger has not challenged that Salinas found Castillo's conduct subjectively offensive. Further, there is significant evidence in the record to indicate that Salinas was subjectively offended by Castillo's behavior. *See* Dkt. 20, Ex. A at 155, 173, 175–77, 203, 308–09, 310–12 (Salinas's Deposition) (testifying that he had reported the incidents to management, that he felt ashamed and would cry at work, and that he experienced illness and sleeplessness as a result of Castillo's conduct). However, Kroger takes the position that the harassment was not sufficiently severe or pervasive to create an objectively hostile work environment. Dkt. 14 at 16–19. Kroger argues that "[t]hree isolated incidents, over the course of more than one year, coupled with crude jokes and inappropriate banter is not severe or pervasive enough to be actionable under the high standard set forth by the Fifth Circuit." *Id.* at 17. In response, Salinas argues that the sexual touching and regular verbal harassment he experienced create a fact issue sufficient to survive summary judgment. Dkt. 20 at 20–21.

The court finds that the harassment alleged is sufficiently severe or pervasive to preclude summary judgment. Although there may have been only "three isolated incidents" of sexual touching, these incidents were combined with verbal harassment that occurred on a "regular basis." Dkt. 20, Ex. A at 340. Even assuming that this conduct cannot be considered "pervasive," Salinas can still survive summary judgment by showing that the harassment was objectively "severe":

> [T]he test—whether the harassment is severe or pervasive–is stated in the disjunctive. An egregious, yet isolated, incident can alter the terms, conditions or privileges of employment and satisfy the fourth element necessary to constitute a hostile work environment. The inverse is also true: Frequent incidents of harassment, though not severe, can reach the level of "pervasive," thereby altering the terms, conditions, or privileges of employment such that a hostile work environment exists. Thus, "the required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct."

10

*Lauderdale*, 512 F.3d at 163 (footnote omitted) (citations omitted). Here, Castillo touched Salinas in a sexual manner on three separate occasions, including one instance in which Castillo grabbed Salinas's testicles. Dkt. 20, Ex. A at 172, 188, 194. A reasonable jury could find that this harassment was sufficiently "severe" to alter a term or condition of Salinas's employment. *See Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 436 (5th Cir. 2005) ("Undoubtedly, the deliberate and unwanted touching of [the victim's] intimate body parts can constitute severe sexual harassment."); *La Day*, 302 F.2d at 482–83 (holding, where the harasser touched the victim's anus on one occasion, that the harassment was sufficiently severe to survive summary judgment, even if the conduct was not pervasive); *Worth v. Tyer*, 276 F.3d 249, 268 (7th Cir. 2001) (holding that the conduct at issue was "severe" where the harasser touched the victim's breast on one occasion, and explaining that "direct contact with an intimate body part constitutes one of the most severe forms of sexual harassment").

The court recognizes that the "severe or pervasive" inquiry requires "consideration of the social context in which particular behavior occurs and is experienced by its target." *Oncale*, 523 U.S. at 81. There is evidence in this case that the produce department at Kroger was overwhelmingly male and that workplace banter between the men was common. Dkt. 14, Ex. 3 at 105–06. However, there is no evidence to indicate that the type of sexual touching alleged by Salinas was common. A reasonable jury could conclude that Salinas experienced severe sexual harassment that far exceeded the bounds of "male-on-male horseplay." *Oncale*, 523 U.S. at 81. Therefore, the court finds that Salinas has raised a genuine issue of material fact regarding whether the harassment at issue was "severe or pervasive."

**C.     Statute of Limitations**

In addition to challenging the substantive basis of Salinas's claim, Kroger also argues that

11

the claim is barred by the applicable statute of limitations. Dkt. 14 at 8–9. "In a state that, like Texas, provides a state or local administrative mechanism to address complaints of employment discrimination, a Title VII plaintiff must file a charge of discrimination with the EEOC within 300 days after learning of the conduct alleged." *Huckabay v. Moore*, 142 F.3d 233, 238 (5th Cir. 1998) (citing 42 U.S.C. § 2000e-5(e)(1)). Here, Salinas filed his charge of discrimination with the EEOC on January 10, 2013. Dkt. 14, Ex. 9. Therefore, in general, only events occurring within the 300 days preceding January 10, 2013, are actionable. The only event falling within this period is the April 6, 2012, incident where Castillo threatened Salinas with a produce knife. The previous incidents of sexual touching fall outside of the limitations period and would ordinarily not be actionable.

However, this limitations period is "not a jurisdictional prerequisite to suit in federal court" and "is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S. Ct. 1127 (1982). For the purposes of equitable tolling, hostile work environment claims are treated differently from claims alleging "discrete acts," such as termination or failure to promote. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113–15, 122 S. Ct. 2061 (2002). Discrete acts "are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* at 113. The Supreme Court has noted, however, that "[h]ostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct." *Id.* at 115. As a result, the Court has "carved out an exception for claims based on a hostile work environment." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir. 2004). The Court has explained this "continuing violations" exception as follows:

12

> A hostile work environment claim is composed of a series of separate acts that collectively constitute one "unlawful employment practice." The timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

*Morgan*, 536 U.S. at 117 (citation omitted); *see also Pegram*, 361 F.3d at 279 ("Under the continuing violations doctrine, a plaintiff is relieved of establishing that all of the alleged discriminatory conduct occurred within the actionable period, if the plaintiff can show a series of related acts, one or more of which falls within the limitations period." (citation omitted)). Therefore, if applicable, the continuing violations doctrine would allow the court to consider the incidents of sexual harassment that fall outside of the limitations period in determining liability.

Kroger argues that the continuing violations doctrine cannot be applied here because (1) Salinas has not alleged an actionable event of harassment within the limitations period, and (2) Salinas was on clear notice of a potential sexual harassment claim and should have asserted his rights earlier. Dkt. 14 at 8–9; Dkt. 22 at 3–5.

### 1. Actionable Event of Harassment

Kroger correctly emphasizes that Salinas cannot make use of the continuing violations doctrine unless he shows that an actionable event of sexual harassment occurred within the limitations period. Dkt. 14 at 9; *see Huckabay*, 142 F.3d at 240 ("The [continuing violations] doctrine will render a complaint timely as to a course of conduct only if the complaint is timely as to the most recent occurrence."); *Berry v. Bd. of Supervisors of L.S.U.*, 715 F.2d 971, 981 (5th Cir. 1983) (noting that the same type of discrimination must occur inside and outside the limitations

period to connect the events as a continuing violation). Kroger argues that only the April 6, 2012, knife incident occurred within the limitations period, and that incident was not sexual in nature and therefore does not constitute actionable sexual harassment. Dkt. 14 at 8–9. Therefore, Kroger concludes that Salinas cannot use the continuing violations doctrine to salvage the earlier, untimely incidents of sexual harassment. *Id.* at 9. In response, Salinas does not dispute that the knife assault is the only event falling within the limitations period. Dkt. 20 at 23–25. Instead, Salinas argues that, in context, the knife assault was sexual in nature and constitutes actionable sexual harassment. *Id.* at 24.

On its face, Castillo's knife assault on Salinas contains no sexual content. However, the court is not required to consider the knife assault in a vacuum. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270, 121 S. Ct. 1508 (2001) ("Workplace conduct is not measured in isolation . . . ."); *Cortes v. Maxus Expl. Co.*, 977 F.2d 195, 200 (5th Cir. 1992) (noting that even time-barred conduct can be used to illuminate an event which, viewed in isolation, may not indicate discriminatory motives). In the context of Salinas's previous interactions with Castillo, the court finds that the knife assault could reasonably be interpreted as sexual in nature. When asked about the knife assault, Salinas gave the following testimony:

> Q.   So you felt like the—the events on April 6th was more of a violent act against you, not a sexual act, right?
> . . . .
> A.   It was both.
> Q.   Okay. Hold on. In—in your notes here, in your statement, you said that he was trying to get revenge against you because you had reported him earlier, right?
> A.   Yeah, for those things he was doing to me.
> Q.   Right. And—and you feel like on April 6th what he did was because—born out of anger against you, right?
> . . . .
> Q.   Is that—was that your impression?

14

> A. He wanted—he wanted these things from me he couldn't get from me, that he wanted from me. And—and that's why he—he'd do—he'd do that to me.
> Q. Okay.
> A. I can't give him that. I'm a man. I can't do that with him.

Dkt. 20, Ex. A at 320–21. This testimony indicates that Salinas considered the knife assault to be a sexual incident resulting from his refusal to submit to Castillo's sexual advances. Contrary to Kroger's assertion, Salinas's interpretation is supported by more than simply his "subjective belief." Dkt. 22 at 2. Castillo had previously said to Salinas: "When are you going to give me some of that white ass? If you don't give it to me, I'm going to take it away. No one is here in the morning, just you and me. I will rape you and no one will find out." Dkt. 20, Ex. A at 172. In context, a reasonable jury could interpret the knife assault as an escalation of Castillo's previous rape threat or as an act of retaliation resulting from Salinas's rejection of Castillo's sexual advances. *See, e.g.*, *La Day*, 302 F.3d at 480 ("Moreover, Craft's later hostility toward La Day, exemplified by his spitting tobacco at him, plausibly could be interpreted as anger over La Day's rejection of his sexual advances."). Therefore, the court finds that Salinas has raised a fact issue regarding whether the April 6, 2012, knife assault was part of a continuing pattern of sexual harassment.

**2. Notice**

Kroger next contends that the "continuing violation theory does not apply to untimely events where the plaintiff was on clear notice of a sexual harassment claim." Dkt. 22 at 3. Kroger argues that Castillo's overt sexual conduct should have put Salinas on notice of a potential sexual harassment claim before the knife assault. *Id.* at 4. Kroger also notes that Salinas made multiple complaints to Kroger management. *Id.* at 3. Kroger argues that these complaints establish that Salinas was on notice of a potential sexual harassment claim before the knife assault; therefore,

Salinas cannot appeal to the equitable continuing violations doctrine to excuse his failure to timely exercise his rights. *Id.* at 4–5.

The continuing violations doctrine is based on the concept that equity

> may very well require that the filing periods not begin to run until facts supportive of a Title VII charge or civil rights action are or should be apparent to a reasonably prudent person similarly situated. The focus is on what event, in fairness and logic, should have alerted the average lay person to act to protect his rights.

*Messer v. Meno*, 130 F.3d 130, 135 (5th Cir. 1997) (quoting *Glass v. Petro-Tex Chem. Corp.*, 757 F.2d 1554, 1560–61 (5th Cir. 1985)). In determining whether application of the continuing violations doctrine is appropriate in an individual case, courts consider three primary factors:

First, courts consider the subject matter of the conduct—whether "the alleged acts involve the same type of discrimination." *Berry*, 715 F.2d at 981. As noted above, a reasonable jury could find that all of the incidents in this case involved the same subject matter—specifically, a pattern of sexual harassment.

Second, courts consider the frequency of the conduct—whether the acts are recurring "or more in the nature of an isolated work assignment or employment decision." *Id.* The acts of harassment in this case were not comparable to an isolated employment decision or work assignment; rather, the acts were recurring and included multiple instances of physical and verbal harassment.

Third, courts consider the "degree of permanence" of the discriminatory acts—"[d]oes the act have the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected *without being dependent on a continuing intent to discriminate*." *Id.* (emphasis added). In this case, the harassment arguably did not have the

"degree of permanence" that would put the average person on notice of a duty to assert his legal rights. Here, the continued existence of the consequences of the discrimination depended on Castillo's continuing intent to discriminate against Salinas. Castillo's harassment can be contrasted with a discrete act that has lasting consequences independent from the discrimination itself, such as a termination. *See Huckabay*, 142 F.3d at 239–40 (finding that the "pattern of harassment" supporting the plaintiff's hostile work environment claim "was not the kind of violation that—like a discrete instance of discriminatory conduct—would put a worker on notice that his rights had been violated"); *see also Waltman v. Int'l Paper Co.*, 875 F.2d 468, 476 (5th Cir. 1989) ("Acts of harassment that create an offensive or hostile environment generally do not have the same degree of permanence as, for example, the loss of promotion. If the person harassing a plaintiff leaves his job, the harassment ends; the harassment is dependent on a continuing intent to harass. In contrast, when a person who denies a plaintiff a promotion leaves, the plaintiff is still without a promotion even though there is no longer any intent to discriminate."). Salinas's continuing violation theory is not based on the mere effects or adverse consequences of an instance of discrimination. Rather, the continuing violation stems from the pattern of discriminatory treatment Castillo inflicted over an extended period of time.

Contrary to Kroger's assertion, the mere fact that Salinas reported the incidents of harassment to Kroger's management is not fatal to his continuing violation argument. These reports could indicate that Salinas was aware of a potential sexual harassment claim. Equally likely, however, these reports could merely indicate that Salinas was aware that Castillo's conduct was inappropriate in the workplace. The cases relied on by Kroger are distinguishable. *See Abrams v. Am. Airlines Inc.*, 302 F. App'x 242, 244 (5th Cir. 2008) (refusing to apply the continuing violations doctrine where the plaintiff did not identify any harassing conduct during the limitations period and where

17

the employer informed the plaintiff that it was closing its internal investigation into her complaints); *Burrell v. Crown Cent. Petroleum, Inc.*, 255 F. Supp. 2d 591, 613 (E.D. Tex. 2003) (declining to apply the continuing violations doctrine where the plaintiff admitted in her deposition that she knew she could file a claim and where the plaintiff was a supervisor with the authority to address discriminatory conduct). It is the jury's role to determine when a reasonable person in Salinas's position should have realized that Castillo's conduct crossed the line from inappropriate to actionable sexual harassment. *See Arredondo v. Estrada*, 2:14-CV-170, 2015 WL 4523545, at *4 (S.D. Tex. July 27, 2015) (Ramos, J.) ("It is a question for the jury to determine when, in fairness and in logic, [the plaintiff] should have seen the harassment he endured as a pattern of discrimination."); *see also Waltman*, 875 F.2d at 476 (finding a material issue of fact regarding whether the acts of sexual harassment at issue had the quality of permanence that would alert the plaintiff that her rights had been violated). Therefore, the court finds that Salinas has raised a jury question regarding whether he timely exercised his legal rights.

Having reviewed Kroger's arguments in favor of summary judgment, the court finds that the motion should be DENIED.

### IV. CONCLUSION

Kroger's motion for summary judgment (Dkt. 14) is DENIED.

Signed at Houston, Texas on February 12, 2016.

_____
Gray H. Miller
United States District Judge